## NORTHERN PACIFIC RAILWAY COMPANY v. ELY.
## SAME v. SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

Nos. 102, 88.   Submitted December 15, 1904.—Decided February 20, 1905.

*Northern Pacific Railway Company* v. *Townsend,* 190 U. S. 267, affirmed as to the point that individuals cannot for private purposes acquire by adverse possession under a state statute of limitations any portion of the right of way granted to the Northern Pacific Railway Company. But by the act of April 28, 1904, that right of way was narrowed to two hundred feet in width and title acquired to land outside of a strip of that width was confirmed.

As the decree in this case was rendered and a writ of error therefrom was pending in this court prior to April 28, 1904, the decree must be reversed and the case remanded to the state courts to be dealt with in view of the application of the act of April 28, 1904.

THE facts are stated in the opinion.

*Mr. C. W. Bunn* and *Mr. James B. Kerr* for plaintiff in error.

*Mr. William E. Cullen* and *Mr. Samuel R. Stern* for Ely, defendant in error.

*Mr. Harold Preston* and *Mr. F. T. Post* for Browne and others, defendants in error, cited to effect that a railroad company may lose by abandonment or adverse possession unused portions of its right of way: *Pittsburg &c. Ry. Co.* v. *Stickley,* 155 Indiana, 312; *Railroad* v. *Houghton,* 126 Illinois, 233; *Railroad* v. *O'Connor,* 154 Illinois, 550; *Railroad* v. *Moore,* 160 Illinois, 9; *Railroad* v. *Donohue,* 165 Illinois, 640; *Railroad* v. *Wakefield,* 173 Illinois, 564; *Matthews* v. *Lake Shore R. R.,* 110 Michigan, 170; *Turner* v. *Fitchburg R. R.,* 145 Massachusetts, 143; *Gay* v. *Boston A. R. Co.,* 141 Massachusetts, 407; *Paxton* v. *Yazoo & M. V. R. R.,* 76 Mississippi, 536; *Spottswood* v. *Morris E. R. Co.,* 61 N. J. Law, 322; *Townsend* v. *N. P. R. R. Co.,* 84 Minnesota, 152; *Bobbitt* v. *Railway Co.,* 9 Q. B. Div. 424; *Newton* v. *Railway Co.,* 13 Ch. Div. 268; *Rosseau* v. *Railway Co.,* 17 Ont. App. 483.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a suit brought by the Northern Pacific Railway Company, successor to the Northern Pacific Railroad Company, in the Superior Court of the County of Spokane, State of Washington, against a large number of persons, to quiet title, remove clouds and recover possession of certain parcels of real estate, alleged to be portions of its right of way in that county.

The complaint alleged that plaintiff was the owner and entitled to a strip of land, four hundred feet wide, on which defendants had wrongfully entered. Some of the defendants were defaulted. Separate answers were interposed by others, separate trials had, separate verdicts rendered, and bill of exceptions granted. As to one defendant, the case was submitted to the court for trial, and findings of fact and conclusions of law were made and filed.

A single decree was rendered in favor of contesting defendants, from which the railway company appealed to the Supreme Court of the State, where the decree was affirmed. 25 Washington, 384.

The opinion of that court was filed June 29, 1901, and judgment of affirmance entered July 30, 1901. On May 4, 1903, the case of *Northern Pacific Railway Company* v. *Townsend,* 190 U. S. 267, was decided. May 28, 1903, the railway company was allowed a writ of error from this court, the judgment of the State Supreme Court being described as entered June 29, 1901. The case was docketed July 23, 1903, and is now numbered 88. June 30 a second writ of error was taken out and filed below, the papers correctly describing the judgment as entered July 30, 1901, and was docketed here August 13, 1903, and is now numbered 102.

Plaintiff moved for leave to amend the record in No. 88 so that the date of the judgment might be correctly given, and that thereupon No. 102 be dismissed, or, in the alternative, that No. 88 be dismissed. We grant the latter application and dismiss No. 88 without prejudice to proceeding in No. 102. *Wheeler* v. *Harris,* 13 Wall. 51; *Silsby* v. *Foote,* 20 How. 290.

The facts on which the State Supreme Court proceeded are thus stated:

"It may be conceded, we think, that the right of way which embraces the land in dispute was granted to the Northern Pacific Railroad Company by act of Congress in 1864, and that, to the title to the right of way thus granted to the Northern Pacific Railroad Company, the Northern Pacific Railway Company has succeeded. It may also be conceded, for the purposes of this case, that the Northern Pacific Railway Company has complied with all the terms and provisions of the act of Congress aforesaid, and has constructed its railroad through the whole of the line of road between the points named in the granting act; that a map of definite location was filed October 4, 1880, prior to the acquiring of the title to the land in question by the defendants or their predecessors or grantors; and that said railroad has been continuously operated since its construction. The defendants, answering, claim title by patent from the United States Government. The land was acquired under the preëmption and homestead acts, respec-

tively, and all the defendants or their grantors have been in quiet, peaceful, undisturbed, and undisputed possession of said land for more than ten years immediately prior to the commencement of this action, many of them for nearly twenty years. Valuable improvements have been made by the defendants, the said land consisting of town lots in the city of Spokane, and having been platted and laid out as additions to the city of Spokane by the defendants or their grantors after acquiring title to the same from the United States Government. During all these years no claim whatever to these lands has been made by the appellant. It has stood by and seen improvements made thereon, and, in the case of defendant Brown, an agreement was entered into between him and General Sprague, who was then the general superintendent of the Northern Pacific Railroad Company, that they would plat their lots so that the streets of the addition which the railroad company was dedicating would correspond with and meet the streets which Brown was dedicating to the city of Spokane, and the agreement was carried out by arranging the streets in accordance therewith. These streets have been used by the public for from ten to eighteen years. The testimony shows that, in addition to the improvements which these defendants have made upon their lots, many thousands of dollars have been paid by them for assessments levied upon abutting land for the improvement of streets running through this right of way; that the appellant has never paid these assessments; that they have never been assessed to the appellant and that no question has ever been raised by the appellant as to the right and obligation of the defendants to pay the same. While the record does not show that any of the lands owned by the defendants were deeded to them by the appellant, it does show that the Northern Pacific Railroad Company has deeded to other parties lots in the city of Spokane situated within the 400 feet of right of way, upon which valuable improvements have been made by its grantees."

It may be added that it was only as to some of the parcels

that the filing of the map of definite location and the construction of the railroad preceded the filing of the entries. But we regard the case as falling within the rule holding the grant of the right of way effective from the date of the act. *Railroad Company* v. *Baldwin*, 103 U. S. 426.

The Supreme Court held that the action was barred by the statute of limitations; that the company was estopped from asserting title by reason of the circumstances; and that: "Where, through the negligence and laches of a railroad company, the occupancy by others of portions of the right of way granted to it by the Government has ripened into title by adverse possession, the company cannot set up the defense that the right of way was granted for public purposes only and that it would be against public policy to permit either its abandonment by the company or the acquisition of adverse rights therein by way of estoppel or of the bar of the statute of limitations."

As before stated, on the fourth day of May, 1903, the decision of this court in *Northern Pacific Railway Company* v. *Townsend*, 190 U. S. 267, was announced. We there ruled that individuals could not for private purposes acquire by adverse possession, under a state statute of limitations, any portion of a right of way granted by the United States to a railroad company in the manner and under the conditions that the right of way was granted to the Northern Pacific Railroad Company. At the same time it was not denied that such right of way granted through the public domain within a State was amenable to the police power of the State. And we said: "Congress must have assumed when making this grant, for instance, that in the natural order of events, as settlements were made along the line of the railroad, crossings of the right of way would become necessary, and that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed. But such limitations are in no sense analogous to claim of adverse ownership for private use."

We are not prepared to overrule that decision, and tested by it, the judgment in this case must be reversed. But we were then dealing with the original right of way, which was of a width of four hundred feet. April 28, 1904, an act of Congress entitled "An act validating certain conveyances of the Northern Pacific Railroad Company and the Northern Pacific Railway Company," was approved, 33 Stat. 538, c. 1782, reading as follows:

"That all conveyances heretofore made by the Northern Pacific Railroad Company or by the Northern Pacific Railway Company, of land forming a part of the right of way of the Northern Pacific Railroad, granted by the Government by any act of Congress, are hereby legalized, validated, and confirmed: *Provided,* That no such conveyance shall have effect to diminish said right of way to a less width than one hundred feet on each side of the center of the main track of the railroad as now established and maintained.

"SEC. 2. That this act shall have no validating force until the Northern Pacific Railway Company shall file with the Secretary of the Interior an instrument in writing, accepting its terms and provisions."

The terms and provisions of the act were accepted by the railway company June 22, 1904, and the acceptance, duly certified, was filed in the Interior Department July 7, 1904.

In the *Townsend case* it was said, among other things (p. 271):

"Manifestly, the land forming the right of way was not granted with the intent that it might be absolutely disposed of at the volition of the company. On the contrary, the grant was explicitly stated to be for a designated purpose, one which negated the existence of the power to voluntarily alienate the right of way or any portion thereof. The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition

of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. . . . Congress having plainly manifested its intention that the title to and possession of the right of way should continue in the original grantee, its successors and assigns, so long as the railroad was maintained, the possession by individuals of portions of the right of way cannot be treated without over-throwing the act of Congress as forming the basis of an adverse possession which may ripen into a title good as against the railroad company." 190 U. S. 271, 272.

The act of April 28, 1904, in view of our decision in that case, was obviously intended to and did have the effect to narrow the right of way to two hundred feet in width, so far at least as outside of that strip the original right of way had been parted with.

The rule in the State of Washington as to adverse possession is thus stated by the Supreme Court in this case:

"One holding land adversely to the rights of another can be divested only by the action of the other, even with a better right, within the time prescribed by the statute of limitations, and this is true, even though he may have originally entered under a void grant or sale. But his claim ripens into a perfect title and becomes absolute, if such possession is not disturbed within the time prescribed. As is said by 3 Washburn on Real Property, 5th ed., p. 176:

" 'The operation of the statute takes away the title of the real owner and transfers it, not in form, indeed, but in legal effect, to the adverse occupant. In other words, the statute of limitations gives a perfect title. The doctrine is stated thus strongly, because it seems to be the result of modern decisions, although it was once held that the effect of the statute was merely to take away the remedy, and did not bind the estate, or transfer the title.' " 25 Washington, 388.

In *Sharon* v. *Tucker,* 144 U. S. 533, 543, where the statute of limitations in force in the District of Columbia was applied, Mr. Justice Field, speaking for the court, said:

"It is now well settled that by adverse possession for the period designated by the statute, not only is the remedy of the former owner gone, but his title has passed to the occupant, so that the latter can maintain ejectment for the possession against such former owner should he intrude upon the premises. In several of the States this doctrine has become a positive rule, by their statutes of limitations declaring that uninterrupted possession for the period designated to bar an action for the recovery of land shall, of itself, constitute a complete title. *Leffingwell* v. *Warren,* 2 Black, 599; *Campbell* v. *Holt,* 115 U. S. 620, 623."

This was quoted in *Toltec Ranch Company* v. *Cook,* 191 U. S. 532, 538, and it was remarked:

"Adverse possession, therefore, may be said to transfer the title as effectually as a conveyance from the owner; it may be considered as tantamount to a conveyance."

So far as title to portions of the right of way could be lawfully acquired from the railway company, defendants below, appellees in the Supreme Court, had acquired title to their parcels by adverse possession, and occupied the same position as if they had received conveyances, which the act of April 28, 1904, operated to confirm. The act is remedial and to be construed accordingly. The lots of some of the defendants were outside of the two hundred feet. The lots of others were partly within and partly without the strip. But the act was passed after the judgment of the Supreme Court was rendered and while the case was pending here, and it must be left to the state courts to deal with the matter in the light of the conclusions at which we have arrived.

In *Railway Company* v. *Twombly,* 100 U. S. 78, which was a writ of error to the Supreme Court of the Territory of Colorado, the act authorizing the action was repealed while the writ was pending in this court, and we, in the exercise of appellate jurisdiction, declined to send the case back to the court below with instructions to enter a judgment of nonsuit, and affirmed the judgment because we found no error.

In the present case, the parties will not be compelled to resort to some form of original proceeding to obtain relief under the act of April 28, 1904, as, apart from the statute, the decree must be reversed, and thereupon the record will be open for such adjudication as the then situation may demand.

> *In No. 88, writ of error dismissed; in No. 102, decree reversed and cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HARLAN was of opinion that the decree of the state Supreme Court should be affirmed for the reasons given, and, therefore, dissented.