THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. JOHN O'LEARY *et al., as Partners, etc.*

No. 15,894. (100 Pac. 628.)

SYLLABUS BY THE COURT.

INJUNCTION—*Paving Railroad Right of Way Used as a Street—Adverse User.* An order refusing an injunction to restrain the contractors of a city from paving a part of a railway company's right of way, long used without objection as part of a public street, should, under the facts found by the district court, contain provisions to the effect that the improvement shall not give to the city or to the public any title to the land, or any interest that can ripen into a title by user or

that will obstruct the company in the use of its right of way for the purposes for which it was granted, or impair its title thereto.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed March 6 1909. Modified.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*L. P. Brooks,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: The railway company sought to enjoin O'Leary & Rushmore from paving a strip of land included in its right of way and used by the city of Cherryvale as a street. The material facts are: The plaintiff is the owner of the right of way acquired by the Leavenworth, Lawrence & Galveston Railway Company under the act of congress of March 3, 1863, granting lands to aid in the construction of railroads. The width of this right of way is 200 feet, 100 feet on each side of the line of railway, which extends north and south through the city. The street extends north and south along the west side of this right of way, and encroaches upon it at the place in question to the width of thirty feet at the north end and running out to a point 700 feet to the south. This street has been continuously used by the public, including the strip in question, for more than twenty years, without objection by the owners of the right of way, and the court found:

"That owing to the peculiar conditions surrounding the tract in dispute, it is not practical to use the same for railroad purposes, and the use of it is not necessary to perform any of its duties to the public or to the general government; that it is a part of a street leading from the business part of the city to the depot of the St. Louis & San Francisco Railroad Company, which is located within the limits of the 200 feet of the plaintiff, and adjoins the main line of plaintiff at the intersection

of the main line of both railroads, and is used for the accommodation of both railroads, and leads also from the said depot to that of plaintiff.

"That the city is powerless to acquire a street affording the same conveniences to the public except by condemnation of adjacent property, which is partly built over, and such condemnation would involve the destruction of the buildings on such adjacent lands."

The company has never used this strip in the operation of its railroad, and at present does not need to use it. The mayor and council of Cherryvale, proposing to pave the street with brick, entered into a contract with the defendants to construct the pavement, and these parties were proceeding under that contract, without the consent of the company, to grade and prepare the surface of the street, including this strip, for such paving, when they were interrupted by a restraining order issued in this case. On motion the restraining order was set aside and a temporary injunction refused. The company asks for a reversal of this order.

The company does not claim that the pavement alone would interfere with or obstruct its use of the land in question for purposes of a right of way, but it is contended that if the improvement is allowed to proceed without objection it will be tantamount to an appropriation of the land for street purposes that may eventually ripen into an adverse title, and that the company will thereby be deprived of a part of its right of way. The city does not claim that it has acquired the right to use this strip for a public street, either by conveyance or by any proceeding to that end, but claims that the pavement will not interfere or obstruct the railway in any manner or to any extent in any use that it may properly make of its right of way. The findings of the court seem to be based upon this view, and fully declare the right of the railway company to the strip of land under the congressional grant. The conclusions of law, however, appear to warrant the contention of the company that the improvements and use by the city

may be equivalent to an appropriation of its right of way. Thus the court found:

"That the injury, if any, sustained by and threatened is such as may easily be ascertained and compensated for in money, hence an action for equitable relief can not be maintained."

If damages can be ascertained and compensated in money it would seem to be upon the theory that the land had been appropriated for a public street, and this appropriation the company desires to prevent. From the findings of fact it is clear that no actual damages would be suffered from the proposed improvements, and that the damages referred to were therefore nominal. No probable loss or injury would result from the paving of this strip of land and its continued use as a street, so long as such use did not obstruct or interfere with the use by the company of its right of way. The rights of the company in the premises are stated in the opinion in *Northern Pacific Ry. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, where it was said:

"The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use would be to allow that to be done by indirection which could not be done directly. . . . Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by congress, for, as said in *Northern Pacific Railroad Co. v. Smith,* 171 U. S. 261, 275, 18 Sup. Ct. 794, 43 L. Ed. 157, speaking of the very grant under consideration: 'By granting a right of way four hundred feet in

width, congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes." (Page 271.)

In the same opinion, referring to the rights of the public and the uses that might be made of the right of way for other purposes, the court said:

"Congress must have assumed when making this grant, for instance, that in the natural order of events, as settlements were made along the line of the railroad, crossings of the right of way would become necessary, and that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed. But such limitations are in no sense analogous to claim of adverse ownership for private use." (Page 272.)

This was quoted with approval in the later case of *Northern Pacific Railway Co. v. Ely,* 197 U. S. 1, 25 Sup. Ct. 302, 49 L. Ed. 639. These quotations apparently settle the title of the company in the right of way, both parties being satisfied with this interpretation.

If the pavement of the street, including the strip in question, is allowed to proceed, and the use for street purposes is continued as heretofore while existing conditions remain, the city will acquire no permanent right, and it is not perceived how the company will lose any benefit or suffer any loss. The use of the land in question for street purposes with a pavement upon it will not affect the situation as a matter of law nor in fact. If the company at any time has occasion to use this part of its right of way for railroad purposes the presence of this pavement will not prevent it. Public

Van Arsdale v. Foster.

convenience and safety will in the meantime be promoted by the improvement. The equitable powers of the court ought not to be interposed to prohibit such use where such intervention is not necessary to prevent the use from ripening into an adverse title. Our conclusion is that, to avoid any possible interpretation to the contrary, the order should be so modified as to allow the improvement to be made, but with a clear statement to the effect that it shall not give to the city or to the public any title to the land, or any interest that can ripen into a title by user or that will interfere with the company in the use of its right of way for the purposes for which it was granted, or impair its title thereto.

The cause is remanded, with instructions to modify the order refusing a temporary injunction in accordance with the views herein expressed.