NORTHERN PAC. RY. CO. v. LITTLEJOHN et al.

(District Court, W. D. Washington, S. D. August 19, 1912.)

No. 1,702.

1. ADVERSE POSSESSION (§ 60*)—NATURE OF POSSESSION—INCLOSURE OF OTHER LANDS BY LESSEE.

The inclosure by a lessee of land of his lessor, adjoining, but not included in, the leased premises, and its use in connection therewith, is presumptively not adverse to the lessor's title, but by license from him; and the possession does not become adverse by a transfer of the fence to another, not connected with the lease, unless and until notice of the transfer is brought home to the true owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–314; Dec. Dig. § 60.*]

2. ADVERSE POSSESSION (§ 29*)—NATURE AND REQUISITES—CONTINUITY OF POSSESSION.

Neither a single act of trespass by defendant on lands of complainant by the cutting of trees thereon, nor the occasional pasturing of stock turned into a field a part of which was concededly owned by defendant, nor both together, constituted such open, notorious, and continuous possession as will support a claim of title by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 124, 125; Dec. Dig. § 29.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. ADVERSE POSSESSION (§ 94*)—NATURE AND REQUISITES—PAYMENT OF TAXES.
The payment of taxes on land by one claiming adversely under color of title cannot aid his claim, where the owner of the legal title also paid taxes on the land for the same years.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 528, 529; Dec. Dig. § 94.*]

In Equity. Suit by the Northern Pacific Railway Company against A. J. Littlejohn, Angie St. John, and George St. John. Decree for complainant.

Geo. T. Reid, J. W. Quick, and L. B. Da Ponte, for complainant.
Robert M. Davis and C. M. Riddell, for defendants.

CUSHMAN, District Judge. This is a suit brought by the plaintiff, Northern Pacific Railway Company, successor to the Northern Pacific Railroad Company, to quiet title to a strip of land 100 feet wide, the same being a part of its 400-foot main line right of way from Tacoma to Portland, granted by the act of Congress of July 2, 1864, and joint resolutions of April 10, 1869, and May 31, 1870. It is the outer 100 feet on one side of this right of way that is in controversy.

The defendants claim to have acquired title by adverse possession. The claim asserted by them in their answer extended to within 50 feet of the center of the main track of the plaintiff at this point; but, on the trial this portion of the asserted claim was abandoned, and it was only maintained as to the outer 100 feet. The defendants claim possession since 1888. They depend, to establish possession, upon inclosures, the pasturing of cattle in the inclosure, the cutting of timber upon the lands, and the paying of taxes from 1888 to 1900. In 1900 it appears that the county treasurer refused defendants' tender of the taxes, because the collection officers, under decisions of the state courts, held the land to be part of the right of way.

Section 280 of Pierce's Code (Rem. & Bal. Code, § 156) provides:

"Ten Years a Bar.—The period prescribed in the preceding section for the commencement of actions shall be as follows:
"Within ten years:
"1. Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action."

Section 1158 of Pierce's Code (Rem. & Bal. Code, § 786), February 16, 1893, provides:

"Limitation of Action Against Record Title and Possession—Seven Years.—That all actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed, by actual, open and notorious possession for seven successive years, having a connected title in law or equity deducible of record from this state or the United States or from any public officer, or other person authorized by the laws of this state to sell such land for the nonpayment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution or under any order, judgment or decree of any court of record, shall be brought within seven years,

next after possession, being taken as aforesaid but when the possessor shall acquire title after taking such possession, the limitation shall begin to run from the time of acquiring title."

The act of April 28, 1904 provides:

"That all conveyances heretofore made by the Northern Pacific Railroad Company or by the Northern Pacific Railway Company of land forming a part of the right of way of the Northern Pacific Railroad granted by the government by any act of Congress are hereby legalized, validated and confirmed: Provided, that no such conveyance shall have effect to diminish said right of way to a less width than one hundred feet on each side of the center of the main track of the railroad as now established and maintained.

"Section 2. That this act shall have no validating force until the Northern Pacific Railway Company shall file with the Secretary of the Interior an instrument in writing, accepting its terms and provisions." 33 Stat. p. 538, c. 1782.

The terms of this act were accepted by the railroad company on June 22, 1904, and duly certified. The acceptance was filed with the Secretary of the Interior July 7, 1904. N. P. R. R. Co. v. Ely, 197 U. S. 1, 6, 25 Sup. Ct. 302, 49 L. Ed. 639. In the state of Washington the adverse possession for a sufficient time takes away the title, as well as the remedy, from the real owner, and transfers it to the adverse possessor. N. P. R. R. Co. v. Ely, supra.

No evidence concerning the recitals of the patent, if any, from the government to the defendants' grantor in interest was submitted. The burden of proof, to establish adverse possession, is upon the defendants.

They have offered testimony tending to show the maintenance of a fence, inclosing this and other land conceded to be theirs, continuously since 1888; but this testimony has been overborne by the evidence of the plaintiff, which clearly shows that no fence was kept up around the whole tract, and leaves it very doubtful whether there ever was such a completed inclosure.

[1] Defendants also rely upon a fence built by one Nelson Bennett subsequent to 1900. The evidence is not clear as to exactly when it was built; Bennett testifying that it was built in 1903 or 1904. This latter fence, the evidence shows, has been maintained since its erection and incloses the greater part of the land in controversy, as well as a part of the lands conceded to belong to the defendant Littlejohn, a part of plaintiff's land not in controversy, and certain land not claimed by either party.

It is shown that Bennett, in 1888, leased from the railroad company certain land on its right of way opposite the land in dispute, on which he built a warehouse. This lease has been renewed from year to year since. There is no direct testimony concerning any arrangement by him for the erection of the inclosure. It can only be inferred from the circumstances and situation. This warehouse was used for the storing of equipment and supplies used in Bennett's contracting work. Later he used the warehouse as a stable for his stock, and, in the care of this stock, built the inclosure; the warehouse itself forming a part of the inner, or railroad, side of the inclosure.

Though a witness in the case, he asserted no claim to the ground

inclosed hostile or adverse to the railroad. So far as the right of way was concerned, the use made of it by Bennett was connected with the leased premises in such a way as, in the absence of positive, convincing evidence to the contrary, would impress his possession of the right of way within the inclosure with the character of a lessee's possession, or that of a licensee, and not adverse to the plaintiff, though it was, so far as the defendants' lands are concerned, undoubtedly, a trespass.

When the defendant Littlejohn, about 1905, called Bennett's attention to the fact that his fence inclosed some of defendant's land, Bennett admitted the fact, disclaimed the assertion of any claim or interest in it, and turned over to the defendant his fence and a scraper in settlement for the trespass.

The inclosure by Bennett, not being hostile to the plaintiff in the first instance, would not become so merely by his surrendering his interest in the fence to the defendant. The plaintiff would have no knowledge or means of knowing that this defendant was asserting title because of it. 1 Am. & Eng. Encyc. (2d Ed.) p. 805. It might as well be presumed that Bennett and his grantee of the warehouse were asserting title to the defendant's land by the inclosure—in fact, better, for constructive possession follows the true title. 1 Am. & Eng. Encyc. (2d Ed.) p. 869 (2); Id. p. 871 (d).

The change from the possession of the lessee or licensee to that of a stranger must be brought home to the plaintiff before there would be any ouster and the possession by the inclosure become adverse.

[2] Defendants' counsel has relied upon the case of N. P. R. R. Co. v. Ely, supra; but whether it be conceded, or not, that the adverse possession for the necessary time must, necessarily, precede the date of the confirmatory act of 1904, there has been no actual pedal possession shown, as in the Ely Case, where the ground was covered by occupied buildings. The mere fact that, at some time, the defendant Littlejohn went upon the land and cut timber, which he sold, as stated by him, for $15, would not constitute an ouster, being lacking in continuance or duration, and being only a single act of trespass, and does not establish open and notorious possession. The occasional pasturing of stock, turned into the field, a portion of which was concededly owned by the defendants, would not constitute an ouster; nor would the payment of taxes alone. 1 Am. & Eng. Encyc. (2d Ed.) pp. 828, 831.

[3] Regarding the effect of the payment of taxes prior to 1900, if it be conceded that they were paid by defendant Littlejohn from 1888 to 1900, and that he and his grantors had color of title during that time, defendants cannot prevail, for during all that time the plaintiff not only had color of title, but legal title, and was paying taxes on the same ground, although the taxes were computed on the length of the right of way, without regard to its width or area. It would therefore, so far as this case is concerned, be considered as double taxation. The equities at least would be equal, and the legal title would prevail.

Findings and decree may be prepared in accordance with the foregoing.