[No. 17726.   Department One.   April 20, 1923.]

## B. E. AMERY et al., Respondents, v. ELIZABETH A. McKENZIE, Appellant.[1]

FRAUD (3, 22)—FRAUDULENT REPRESENTATIONS—EVIDENCE—SUF
FICIENCY. The defense of fraud in the sale to defendant of a water
power site adjoining her farm, in that the plaintiff's title and the
power capacity was misrepresented to defendant who was ignorant
of such matters and relied thereon, is properly resolved in favor of
plaintiffs, and findings of no fraud are sustained, where it appears
that the dam maintained by the plaintiff was an injury to defendant's land preventing drainage and irrigation, and that defendant's
principal object was to obtain the unrestricted flow of the water
and right to control it over and off her land, and she made no effort to preserve the dam or to develop or utilize the water power.

Appeals from judgments of the superior court for
Spokane county, Lindsley, J., entered September 13,
1922, upon findings in favor of the plaintiffs, in consolidated actions to foreclose mortgages, tried to the
court. Affirmed.

O. C. Moore, for appellant.
Stephens & Jack and W. W. Zent, for respondents.

HOLCOMB, J.—On August 23, 1913, respondents conveyed to appellant, by warranty deed, a small tract of
land containing about 1.6 acres, adjoining a large tract
containing nearly 600 acres owned by her, and adjoining also the 400-foot right-of-way of the Northern Pacific Railway Company near Marshall, in Spokane
county. On the same day respondents, by quitclaim
deed, relinquished to her all their right, title and interest in and to a certain described tract of land in
section 15, township 24 north, range 42 east, W. M.,
lying easterly of the original center line of the Northern Pacific Railway and west of the easterly right-

[1]Reported in 214 Pac 636.

of-way line of that railway (being within the right-of-way), except a strip of land thirty feet wide on each side of a certain spur track; "together with all the water rights the parties of the first part (respondents) or either of them have appurtenant to or used in connection with the premises above conveyed." On the same day appellant then gave back notes and mortgages aggregating $7,500, one of the mortgages being on the tract of land conveyed by warranty deed to appellant for $2,500, and the other mortgage in the sum of $5,000 on land belonging to appellant in a different locality in Spokane county.

After making payments two successive years on the notes and mortgages, appellant ceased to pay, and finally refused to pay them altogether, and resisted the two foreclosure suits brought to collect the notes and enforce the mortgage liens. Her answers are the same in each case, except that the mortgages are on separate tracts, and admit the execution and delivery of the mortgages and the notes thereby secured. The affirmative defenses pleaded are in effect that the lands conveyed to her comprise a reservoir and power site mostly upon the Northern Pacific right of way; that one of the respondents falsely and fraudulently represented to appellant that the respondents owned and were legally capable of transferring good title to both parcels of land described in the warranty deed and in the quitclaim deed; that the power capacity of a stream flowing into and through a pond upon the premises conveyed was about thirty horsepower and sufficient for the continuous operation of a mill, and of commercial value greatly in excess of $7,500 as a power site utilizing the flow of the stream, at which price they were willing to sell for the reason that it had become necessary for them to electrify their mill.

Appellant alleged that she was entirely without knowledge or experience in such matters, and ignorant of forms used in real estate conveyances and the difference in the legal effect thereof, and that she was not advised until after the institution of respondents' suits that they were not the owners of and had no rights in or to the land on which the pond or reservoir was located, or that the deed received from respondents therefor was a simple quitclaim deed and did not convey the title to her of the premises described therein, and having complete confidence in the honesty and integrity of the respondent, who made the false and fraudulent representations to her, and believing each and all of the statements so made by him, she was induced, in reliance thereon, to purchase the lands referred to and to execute the notes and mortgages in question: that she subsequently learned that the respondents did not in fact own or have any right or title in and to the premises described in the quitclaim deed on which the mill pond or reservoir was located, and that the power capable of being produced by the average unimpounded flow did not exceed two horsepower, and that the power actually developed from impounding the flow of the stream during an average of twenty hours out of each twenty-four hours, in a reservoir situated mostly upon the land described in the quitclaim deed and belonging to the Northern Pacific Railway Company, was not more than fifteen horsepower during the period of four hours out of each twenty-four hours, at the end of which the accumulated water would become exhausted and render reimpounding necessary for the resumption of the operation of the mill. That the premises actually owned by respondents and conveyed to her by warranty deed were of practically no value whatever for any

purpose; that the stream was not capable of being developed so as to develop power for continuous operation of a mill, and that it was not capable of substantial further development, and was of practically no commercial value for power or other purposes, and had she been so advised she would not have consummated the transaction, nor have executed the notes and mortgages sued on. She further alleged that the lands attempted to be conveyed to her were and now are entirely unimproved, except for an old, wornout wooden dam across the stream, and were and are wholly unproductive; that she has never taken possession of nor occupied or exercised control over the same, nor derived any income or profit therefrom. She alleged a willingness to and therewith did offer to reconvey and acquit the lands to respondents and to do equity.

Previously to the trial, it was stipulated in writing that the land described in the quitclaim deed is situated in and constitutes a part of the right of way granted to the Northern Pacific Railroad Company, its successors and assigns by the Act of Congress approved July 2, 1864, 13 Stat. at Large, 365, and that the Northern Pacific Railway Company has succeeded to the title. It is also stipulated that the Northern Pacific Railroad Company, predecessor of the Northern Pacific Railway Company, filed its definite location October 4, 1880, and that the railroad company had constructed its railroad along and across lands of which the lands described in the quitclaim deed are a part, and has ever since continuously operated its railroad thereon, and that the uses to which the premises described in the quitclaim deed were devoted by respondents did not interfere with the uses of the right of way by the railroad company for railroad purposes.

The trial court found, among other things:

"(8) That the principal object in the mind of defendant at the time of the transaction between her and plaintiffs was the unrestricted flow of the water as the said defendants should control it over and off from her land. The operation of the mill by water power by the plaintiffs herein and their predecessors in interest and the maintenance by them of the dam and pond in which the water accumulated by the flow through the lands of the defendant and which backed the water to a certain point upon the lands of the defendant, had been known and recognized for years. The claim of the defendant that she intended to buy the water power only is not sustained. No effort of any kind has ever been made by her to preserve the dam or in any manner attempt to develop or utilize said power, but on the contrary, she has since purchasing plaintiffs' rights therein, drained and irrigated and cultivated her land, which by the maintenance of the dam, as plaintiffs have maintained it, and which they had a right to do, would have been too wet for cultivation, and the court finds that the plaintiffs were exercising a right which the defendant wished to possess and which she did obtain as the result of the execution and delivery of the notes and mortgages involved in this action.

"(9) That there is no evidence of any fraud or misrepresentation to uphold the contention of the defendant."

The court therefore found that there was due from appellant to respondents the sums claimed in each case, and found and fixed reasonable attorney's fees. To these findings, and to the rendering and entering of judgment for deficiencies and for costs and attorney's fees in each case, appellant excepted and appealed from the decrees based thereon.

One of the principal contentions of appellant is that the notes and mortgages are without substantial consideration, based upon the fact that the conveyance by quitclaim deed to appellant was a conveyance of

no more than a part of the right of way of the Northern Pacific Railway Company, which had not been acquired by a deed nor by prescription, and that there was no showing that it could have been so acquired by respondents and their predecessors in interest, under the decisions in *Northern Pac. R. Co. v. Townsend,* 190 U. S. 267; *Northern Pac. R. Co. v. Ely,* 197 U. S. 1; *Northern Pac. R. Co. v. Concannon,* 239 U. S. 382; and *Northern Pac. R. Co. v. McDonald,* 91 Wash. 113, 157 Pac. 222.

It is unnecessary to enter into a discussion of the rights of respondents in and to the land covered by the mill pond or reservoir and dam, although the same were actually upon the right of way of the Northern Pacific Railway Company, for the reason that the court found, and its finding is supported by competent evidence, that the principal object in the mind of the appellant, at the time of the transaction, was the unrestricted flow of the water so that she could be able to control it as she pleased over and off from her land. Respondents and their predecessors had operated, first, a sawmill, commencing about 1879, and subsequently a grist mill by water power, respondents operating a grist mill at the time of the transaction. There had been considerable controversy between appellant and the operators of the sawmill and grist mill as to the use of the water. When the owners and operators of the mills dammed up the water as much as they could so as to obtain a sufficient head of water for their purposes, there is no question but that it interfered with farming and damaged appellant's land. She could not use it to irrigate as she and her tenants desired, neither could they drain the land as they saw fit. It was advisable to secure an unrestricted flow of the water so that the land could be both watered and

drained as desired. Appellant's brother, acting as her agent, had made an offer, at her instance, prior to the time of the transaction involved herein, to obtain control of the water, and "against his will" offered $2,000 therefor. There is evidence, although contradicted, that whatever rights respondents had in and upon the right of way of the railway company were desired by appellant, and that she requested and negotiated for the quitclaim deed thereto.

The evidence shows that the negotiations occupied a period of about three months in 1913, prior to the dates of the instruments in question. Appellant was assisted by her brother and her son, and had an attorney employed. Moreover, she had owned her land since 1889, while respondents had purchased their property from former owners named Pierce and Wiscomb subsequent to 1899. Appellant and her son and tenant must have been thoroughly acquainted with the conditions as to the flow of the water and the necessity of restricting and controlling it, and they must have been almost as familiar with the power capacity of the stream in question as were the respondents. She must have known that most of the mill pond was on the Northern Pacific Railway Company's right of way, and for that reason she demanded a quitclaim deed in settling with respondents and buying the tract of ground immediately adjoining the right of way adjoining her land, and also bought their relinquishment of every kind of water right they had. It was shown that, prior to the acquisition of the water rights and the ability to hold the water for irrigation, her land had only produced wild hay, and that since that time it had been plowed up and was producing crops of alfalfa and grain.

Real estate men also testified that the benefits aris-

ing from the uninterrupted and unrestricted use of the water on the land, over and above the admitted use prior to 1913, was from $50 to $75 per acre on 250 to 300 acres.

The bargain may not have been a good one as to the amount of the consideration to be paid to respondents for what they had by appellant, but it was made openly and without overreaching, and there can be but little question that respondents "were exercising a right which appellant wished to possess," and which she did obtain as a result of the execution and delivery of the notes and mortgages, as found by the trial court.

The finding of the trial court that there was no fraud or misrepresentation entering into the transaction, is fully sustained by the evidence, of which a searching examination has been made.

The findings being amply supported by the evidence, and they sustaining the decrees, the decrees must be and are affirmed.

MAIN, C. J., BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.