CURRY et al. v. PORT LAVACA CHANNEL & DOCK CO.

No. 8364.

Court of Civil Appeals of Texas. San Antonio. Feb. 26, 1930.

H. W. Wallace, of Cuero, and J. T. Linebaugh, of Victoria, for appellants.

Proctor, Vandenberge, Crain & Vandenberge, of Victoria, for appellee.

COBBS, J.

In this suit appellee recovered possession of property against appellants in Port Lavaca Bay in Calhoun county, running out from the bay shore opposite the town of Port Lavaca, the property being described as partly fast land, and partly of tidal waters, and partly of submerged land, and partly of an island in the bay. The suit was not for the recovery of the title to the land, but for the exclusive right to the user of all said property for the enjoyment and maintenance of the corporate rights and franchises conferred upon appellee by its charter as a "dock and channel corporation." The appellants were enjoined by this judgment from conducting any business whatever within the bounds of said area, and from at any time erecting any structure, or maintaining any structure now erected, upon any of said area.

Appellants answered with general and special exception, and disclaimed as to all of the area described in plaintiff's petition, except a particular portion which was described by metes and bounds, and, as to that, pleaded general denial and not guilty, and further asserted title by peaceable, adverse possession, under the five, ten, and twenty-five years statutes of limitation; alleged improvements in good faith of the value of $4,250; prayed that plaintiff take nothing as to the property claimed by appellants, and as to the property embraced in the prolongation of Live Oak street of the town of Port Lavaca, and in the alternative, prayed for judgment for the value of said improvements, and for general relief.

There were no findings of fact or conclusions of law made and filed by the court, but there was filed a statement of all the facts. Judgment was rendered by the court for the appellee, from which appellants perfected an appeal to this court.

The questions raised are the rights asserted by the parties to the property known as the "Young Shell Pile" in Lavaca Bay; and particularly whether appellee, by virtue of its charter as a dock and channel corporation, and work done pursuant to the charter, has the right to oust appellants, prior, peaceable possessors, claiming legal title, from the ground occupied and claimed by them, and in the possession of their predecessors in title when appellee filed its charter in the office of the Secretary of State.

An examination of the testimony, not necessary to discuss because of its length, fully supports the judgment of the court.

The Sanchez League was titled at Civil Law in 1835, and its bay shore line was the line of highest tide. Beyond this line, ownership was in the state. The point of land called for "forms the mouth of Chocolate Bayou with the principal bay," and known as "Galinipper Point," a peninsula running out into the bay between Lavaca and Matagorda Bays, and is about four miles distant, at its nearest point, from the premises in controversy in this suit. No promontory is called for, along bay shore anywhere near the area shown in the charter, since the call is for the bay shore.

The land on the island, and that which forms shoreward from the island, and all flats between the bluff and the island, could not be accretions, because not made up by gradual imperceptible process of nature, but both island and flats were really man made, and for such reason alone were not an accretion.

As the island was first built up by the state, it was the property of the state, not an accretion, even if fast land formed between the island and the shore. Nothing could be an accretion which did not become fast land, and nothing could become an accretion to this particular league unless it was connected with the league above highest tide.

The bay boundary of the Maximo Sanchez League was the line of highest tide, and nothing which extended out in the bay could ever become a part of this grant, by any process, unless it was like the main land, above highest tide. The evidence shows that these flats between the island and the shore were not above highest tide, and that highest tide rolled two or three feet over them.

Appellants claimed the connecting link between the island and the shore was the prolongation of Live Oak street, which contention is not supported by the evidence. That street, for 400 feet, constituted the outer boundary of the area described in the charter, and then the northeastern line of the chartered area turned away towards the east, and did not meet the description in appellants' pleading. The map showed a street called Water street, which constituted the bay boundary of the town, running all along the bay shore and cutting off all' private riparian rights from any property owners in Port Lavaca.

Calhoun county was organized in 1846, the same year as the date of the map.

The original act incorporating Lavaca was in 1848, and same shows that there was then an existent town, the boundaries of which were identical with the John M. Smith tract, of the Sanchez League, and that the town had been laid out by Thomas McConnell, the immediate predecessor in title of Smith.

The Amended Charter of Lavaca, September 1, 1856, by recitals in section 9, shows that the name of Lavaca had been also Port Lavaca, and provides that the subdivisions of said city "originally Port Lavaca, into lots, squares and streets, as made by the proprietors and others, as now recognized and established, and is recognized and established, as the Plan and Subdivision of said city."

Another Act of October 27, 1866, again an amendment to the charter of said city, contains the same identical recitals, as those in the preceding paragraph.

Therefore, there can be no doubt but that this map, as to which Bickford testifies to contents, was the original map of Lavaca or Port Lavaca. Both of these acts prohibit the city authorities from changing any of these lots, streets, and blocks on said map. This map showed Water street running down, inside of the east boundary of the town, and cutting off the bluff lots from the bay. Thus, same cuts off all lots or subdivision from the bay, and destroyed all riparian rights. As a matter of fact, however, Smith owned the only lots on the bluff, which abutted on Water street opposite the chartered area. See Gibson v. Carroll (Tex. Civ. App.) 180 S. W. 630.

Appellee's claim was not to the fee-simple title, but was merely the right to use the property described in the charter for channel and dock purposes for the term of the charter, namely, 50 years from April 20, 1917. West End Dock Company v. State (Tex. Civ. App.) 173 S. W. 285.

■ The grant of an easement, such as is here claimed, for special purposes, by virtue of the charter was only the right to use of the described property for channel and dock purposes, for the expressed term, and subject to regulations, and is not such estate against which limitation could run, at all, for it cannot be acquired by the operation of limitation or prescription, and would merge the public use into a private one. Northern Pacific Railway Co. v. Townsend, 190 U. S. 267, 23 S. Ct. 671, 47 L. Ed. 1044; Ency. U. S. Sup. Ct. Reports, Vol. 7, 968; Northern Pacific Ry. Co. v. Ely, 197 U. S. 1, 25 S. Ct. 302, 49 L. Ed. 639; Northern Pacific Ry. Co. v. Hasse, 197 U. S. 9, 25 S. Ct. 305, 49 L. Ed. 642. It is said, substantially, in the Townsend Case, supra: "Nothing can be done by indirection which could not be done directly. That the whole of the granted right of way is presumed to be necessary for the purpose of the railroad, or otherwise the United States would not have granted it, and this presumption is conclusive as against the claim of an individual of an exclusive right of possession as if private property."

Besides, appellants have not shown a limitation title because the proof shows only seven years, and not ten years, possession. First adverse possession was taken in 1924. Article 1250, R. S. 1911 (art. 1479, R. S. 1925), provides that appellee should have the power, in clearing its right of way, to take any lands for its channel within the boundaries of any bay or lake on the coast of this state, and to take any part of an island belonging to the state that may be requisite and necessary for the construction and successful operation of the channel. It likewise gave a right of way for the width of the channel, of not less than the actual width of the channel, plus seven hundred feet on each side of the channel. And gave the right to extend the channel to the waters of the Gulf of Mexico. Crary v. Port Arthur Channel & Dock Company, 92 Tex. 275, 47 S. W. 967, 970.

As said by the Supreme Court, in the case above cited, the term "waters of the Gulf of Mexico" does not mean waters in the bed of the Gulf, but "is far more comprehensive" and is "sufficiently broad to embrace at least all bays, inlets, and streams upon the gulf coast, to the extent to which they are subject to the ebb and flow of the tide."

Independent of all this, appellants could not question the validity of the charter. This could only be done by the sovereignty that granted the charter, and the remedy is quo warranto, or injunction. G. H. & S. A. Ry. Co. v. State, 81 Tex. 572, 17 S. W. 67; East Line, etc., Ry. Co. v. State, 75 Tex. 434, 12 S. W. 690; Bond v. Terrell Mfg. Co., 82 Tex. 309, 18 S. W. 691; Westervelt v. Meuly (Tex. Civ. App.) 216 S. W. 680.

This is so because a charter is a contract between a state and the individual, and no outsider to the contract can claim its forfeiture. When the incorporators accepted the charter, spent money. and began its work, it became, so to speak, a vested right. "When the rights of a corporation, as set down in its charter, came into inquiry in a collateral proceeding the case is to be treated as if no ground of forfeiture or abuse of such rights existed, unless there had been a judgment declaring the act to be such in a direct action by the State." G. H. & S. A. Ry. Co. v. State, supra.

The oyster house of appellee did not adjoin the channel, but the dock. It was used for other purposes, as well as for the oyster and shrimp business. There is nothing to show that any refuse from the same caused injury to the channel or dock.

The statute gave seven hundred feet on each side of the sixty-foot channel, or 1,460 feet in width. The width given by the charter was four hundred and nineteen feet, and if the channel is going to be widened or extended to the sixty feet, there must be some room to spill material on either bank. However, it does not lie in the mouth of appellants to raise such question, as it can only be raised by the sovereign.

We do not think that any question is better settled than that only the state may attack and have a corporation declared void. Certainly it cannot be done by an individual who finds a corporation standing in its way, and desires to remove it in a collateral proceeding.

We have carefully gone over and considered the able and interesting briefs and contentions of both parties, but fail to find any such merit in appellants' brief that should require a reversal of this case. The propositions are each and all overruled, and the judgment of the trial court is affirmed.