[No. 22134. Department One. April 28, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. M. C.
BALLARD *et al.*, *Appellants*.[1]

*E. E. Wager*, for appellants.

The Attorney General and *E. P. Donnelly*, *Assistant*,
for respondent.

BEALS, J.—In the complaint in this action, the state
alleges that defendants, without right or justification,
caused certain agents and employees of the state to
desist from the construction of a road across a tract
of land in section 32, township 20 north, range 16 east,
in Kittitas county, of which tract defendants claim to
be the owners, the state seeking to enjoin defendants
from interfering with the prosecution of the work. De-
fendants answered, alleging certain facts which they
contend show ownership in them by adverse possession

[1]Reported in 287 Pac. 27.

of a portion of the strip of land along which plaintiff was constructing a highway, and that plaintiff was proceeding without right.

The parties stipulated the pertinent facts, and, upon the trial, judgment was entered in plaintiff's favor, enjoining defendants from interfering with the construction of the road across the land which they claim to own. Defendants appeal from the adverse judgment.

From the stipulation of the parties by which the facts upon which the action should be decided were agreed upon, which is before us as a statement of facts on this appeal, over an appropriate certificate of the trial court, it appears that one Herman Tagge, in April, 1884, settled upon a tract of one hundred sixty acres of land in section 32, township 20 north, range 16 east, Kittitas county, Washington, with the intention of obtaining title thereto under the homestead laws of the United States; that in 1889 Mr. Tagge received from the government a final receipt covering this land, and that a patent therefor was later issued to him for the full one hundred sixty acres; that, immediately after his settlement upon the land, Mr. Tagge constructed a fence inclosing a portion thereof, including the strip which is in controversy here, which fence was continuously maintained by him and his successors in interest up to the date of the stipulation above referred to; that a strip of land one hundred feet in width along one side of the tract lies within the four-hundred-foot right of way granted by act of Congress to the Northern Pacific Railroad Company (now Northern Pacific Railway Company) and constitutes a portion of the outer one hundred feet of such right of way.

It was further agreed that Mr. Tagge and his successors in ownership cleared and cultivated the land

up to their fence and, during the year 1889, constructed lengthwise on this strip of land a ditch to carry water from the Yakima river for irrigation purposes, which ditch was later enlarged and flumed and has been in use ever since its construction; that neither in the patent to Mr. Tagge nor in any subsequent conveyance of the land was there any reservation or exception of the Northern Pacific right of way, or any portion thereof, made or referred to; that in 1889, and after the construction of the line fence by Mr. Tagge, a representative of the Northern Pacific called upon him and requested him to move his fence back one hundred feet, so as to leave the railroad right of way two hundred feet in width on each side of the center line of the railroad tracks, and stated that the railway company would be willing to furnish such wire and posts as would be required for the construction of a new fence; that Mr. Tagge refused to move his fence and asserted that the land belonged to him up to the line thereof.

It was further agreed that no grant of any easement or any other instrument of conveyance has been made by appellants whereby the construction by respondent of any road along the one-hundred-foot strip of land in controversy was authorized; that the map of general location of the railroad was filed in 1883, the map of definite location thereof, December 18, 1884, and that the road was actually constructed in 1886. It was also agreed that the Northern Pacific Railway Company has conveyed to respondent an easement authorizing the construction of a state road along the outer one hundred feet of the railroad right of way, and that by authority of this grant the respondent has commenced construction of a highway.

Appellants contend that the court erred in entering judgment in favor of respondent enjoining

appellants from interfering with the further prosecution of road construction along the strip in controversy.

By act of Congress, passed in 1904 (33 U. S. Stat. at Large, p. 538), Congress declared:

"That all conveyances heretofore made by the Northern Pacific Railroad Company or by the Northern Pacific Railway Company, of land forming a part of the right of way of the Northern Pacific Railroad, granted by the Government by any Act of Congress, are hereby legalized, validated, and confirmed: *Provided,* That no such conveyance shall have effect to diminish said right of way to a less width than one hundred feet on each side of the center of the main track of the railroad as now established and maintained."

Prior to the enactment of this law, the supreme court of the United States had held that no portion of the railroad right of way could be alienated, and that no title thereto could be acquired under the statute of limitations. *Northern Pacific R. Co. v. Townsend,* 190 U. S. 267. After the enactment of the 1904 statute above quoted, the supreme court of the United States, in the cases of *Northern Pacific R. Co. v. Ely,* 197 U. S. 1, and *Northern Pacific R. Co. v. Concannon,* 239 U. S. 382, held that the act of Congress confirmed titles acquired within the outer one hundred feet of the two-hundred-foot right of way existing on each side of the center line of the railroad, whether acquired by grant or by adverse possession, it being held, however, that any title acquired by adverse possession must have ripened into a complete title by such adverse holding prior to the enactment of the act of 1904, and that only such titles by adverse possession as had become fully vested prior to that time were confirmed by the act.

Appellants concede that, if their contention that they have acquired title by adverse possession to the strip

of land in controversy is to be upheld, this court must find that they or their grantors had acquired title to the strip by maintaining adverse possession thereto for the full statutory period prior to April, 1904.

This court, in the case of *Northern Counties Investment Trust v. Enyard,* 24 Wash. 366, 64 Pac. 516, in considering a somewhat similar question, held that the use of a portion of the Northern Pacific Railway Company's right of way by the owner of a tract of land adjoining the same, such owner having fenced the land to within twenty-five feet of the railroad track and cleared and cultivated the same, was not hostile or adverse and must be regarded as permissive only. Respondent contends that the case last cited is directly in point here and requires affirmance of the judgment rendered herein by the trial court.

In the later case of *Northern Pacific R. Co. v. Hasse,* 28 Wash. 353, 68 Pac. 882, 92 Am. St. 840, this court held that the plaintiff was not entitled to ejectment and that the evidence introduced by defendants showed that they had obtained title by adverse possession to that portion of the railroad's right of way which defendants were occupying. The *Enyard* case, *supra,* was discussed and distinguished, attention being called to the fact that in the former case the right of way had been obtained by the railroad company by deed from the owner of the land, whose successors in interest subsequently attempted to maintain title by adverse possession to a portion of the land previously conveyed by their grantor to the railroad company. By the case last cited, the scope of the *Enyard* case was undoubtedly somewhat limited and a rule laid down which is unquestionably more favorable to appellants' contention than that established in the earlier case.

We deem the facts now presented more nearly analogous to the *Hasse* case, in that, in addition to

fencing and clearing the land here in controversy and cultivating the same up to the time of the trial below, appellants and their predecessors in interest constructed and maintained an irrigation ditch along the strip and used and maintained the same for the purpose of carrying water for irrigation purposes. Appellants' use of the land was open and obvious, and Mr. Tagge, as early as 1889, brought his claim of ownership to the attention of the railway company when the latter's section foreman in charge of the section of the track within which the premises in controversy were located called upon Mr. Tagge and requested him to move his fence back one hundred feet so as to leave the full two hundred feet from the center line of the railroad clear and open. At that time Mr. Tagge refused to comply with this request, and stated that the land belonged to him.

Respondent contends that this testimony is immaterial (having reserved in the stipulation the right to urge such contention), but in our opinion it is to be considered, coupled with the other facts of the case, as showing the openness of Mr. Tagge's possession and that he was maintaining such possession under a claim of right. Assuming, as urged by respondent, that the section foreman had no authority to make any agreement on behalf of the railway company, other, possibly, than the offer to furnish wire and fence posts for the construction of a new fence, he was an agent and employee of the railway company with at least apparent authority to discuss with adjoining landowners matters which affected that portion of the right of way under his jurisdiction. Under these circumstances, the evidence referred to has some materiality as indicating the claims of the then owner of the tract now owned by appellants.

In the case of *Northern Pacific R. Co. v. City of*

*Spokane,* 45 Wash. 229, 88 Pac. 135, this court held that the title of some of the respondents, acquired by adverse possession, to land within the outer one hundred feet of the four-hundred-foot right of way granted to the railway company had been established. It is true, as argued by respondents that the facts were quite different from those of the case at bar, but some of the language contained in the opinion is pertinent.

In this case we hold that appellants' use of the strip in controversy was necessarily adverse to the railway company and was entirely inconsistent with its use of the land as a right of way. All the elements necessary to establish title by adverse possession are present and, in our opinion, the facts before us require a holding that appellants have established their title to the strip in dispute by the adverse possession thereof, as maintained by their predecessors in interest for the full statutory period prior to April, 1904.

Respondent contends that appellants voluntarily surrendered to respondent possession of the strip for road-making purposes, and that, for this reason, they are not entitled to maintain the claim which they urge here, but are, in any event, relegated to an action to recover compensation for the taking of their property by respondent. In our opinion the record does not show such facts as would require a holding that appellants are not entitled to relief in this action.

The judgment appealed from is reversed with instructions to the trial court to enter judgment in favor of appellants.

MITCHELL, C. J., PARKER, MILLARD, and TOLMAN, JJ., concur.