[No. 6951.]

## Snow et al. v. Union Pacific Railroad Company.

1. Union Pacific Railroad Company—*Right of Way—Width*—Under the act of congress of July, 1862 (12 Stat. 489) and the act of July 2nd, A. D. 1864 (13 Stat. 356), the right of way of Union Pacific Railroad Company as successor to the Leavenworth, Pawnee & Western Company, is, through lands which were public at the time of the definite location, everywhere 400 feet wide, even though never occupied to the full width.

2. ——*Adverse Possession*—Prior to the act of congress of June 24, A. D. 1912 (Acts 62 Cong. part I, c. 181), no person could by adverse possession acquire title to any portion of the right of way so granted by congress.

The act last cited changes the rule even as to causes pending on appeal at the time of its enactment.

3. Limitations—*Change of the Statute—Effect Upon Pending Causes*—Prior to June 24, A. D. 1912, title to the way granted by act of congress to a railroad company could not be acquired by adverse possession, under the limitation laws of the state. The act of congress of that date (　　Stat.　　) providing that adverse possession of the way shall have the same effect as if the land had been granted absolutely, instead of as a right of way, changes the result, even as to causes in which, prior to its enactment the railroad company had recovered as against the adverse claimant, and the cause was pending on appeal at the date of the enactment.

*Appeal from Arapahoe District Court.*—Hon. Charles McCall, Judge.

Mr. Milton Smith, Mr. Charles R. Brock, Mr. W. H. Ferguson and Mr. W. W. Platt, for appellants.

Mr. Clayton C. Dorsey, Mr. E. I. Thayer, Mr. N. H. Loomis and Mr. Gerald Hughes, for appellee.

Mr. Justice Garrigues delivered the opinion of the court.

This is an action of ejectment brought by the Union Pacific Railroad Company. Judgment below was for plaintiff and defendants bring the case here on appeal.

1. In 1862 Congress passed an act granting to the

Leavenworth, Pawnee & Western Railroad Company, and its successors in title, a 400 foot right of way through the public lands from the Missouri river, where Kansas City is now located, westerly in Kansas to the 100th meridian. In 1864, Congress amended the act of 1862 and authorized an extension of the road westerly from the 100th meridian to connect with the Union Pacific at any point desired, and provided the company that constructed the road should be entitled to all the benefits of the act. The Kansas Pacific, as successor in title, constructed the road westerly from the 100th meridian through Denver, and in 1870 connected it with the Union Pacific at Cheyenne. The Union Pacific is the successor in title of the Kansas Pacific, and when the latter built the road through the land, it was a part of the public domain. The only question tried in the lower court was whether the right of way was 400 feet wide through this land. This question has been finally and definitely settled by the supreme court of the United States in the late case of *Stuart et al. v. The Union Pacific Railroad Company*, 227 U. S. 342, 57 L. Ed., 33 S. C. Rep. 338. It is there held that the 400 foot right of way through the public lands granted to the Leavenworth, Pawnee & Western Railroad Company from the Missouri river to the 100th meridian by the act of 1862, was extended westerly by the act of 1864 to any point desired to connect the road with the Union Pacific; that the constructing company was entitled to all the benefits of the act; that a right of way is a benefit, and the right of way granted was definitely located by the construction of the road to Cheyenne, and is 200 feet wide from the center line of the track through lands that were public, although never occupied and used to its full width.

The land in controversy was public land when the Kansas Pacific built through it and connected with the

Union Pacific at Cheyenne. The Leavenworth, Pawnee & Western was the predecessor in title of the Kansas Pacific, and the Union Pacific is the successor in title of the latter. It therefore follows from the highest final decision of the highest court of the land, by which, in this matter, we are bound, that the Kansas Pacific became vested by those acts of congress with title to a right of way 400 feet wide through the land, and that the Union Pacific, its successor in title, is the owner of that right of way.

2. Defendants pleaded as a second defense, the seven years statute of limitations, to which a general demurrer was sustained, and as to that issue, defendants elected to stand on the answer.

A jury was waived, and by consent the case was tried to the court on the issue raised by the complaint and the general denial. On the trial, defendants admitted that plaintiff's witnesses would testify that the Union Pacific is successor in title to the Kansas Pacific, formerly known as the Union Pacific Railroad Company, Eastern Division, and before that, known as the Leavenworth, Pawnee & Western, which are the companies mentioned in the acts of Congress; that in 1870, the Kansas Pacific constructed the road from Kansas City through the land in question to Denver; that the main track is now located as it was at the time of construction; that the Kansas Pacific, as plaintiff's predecessor in title, complied with all the requirements of the acts of congress; that the Union Pacific is now the owner of the lands granted by congress for a right of way to the predecessor companies; that the parcel in dispute lies within 100 feet from the center line of the track, but outside a line 100 feet from the center line; that the line through the land is a part of the railroad constructed from the Missouri river at the mouth of the Kansas river westward to connect with the main

line of the Union Pacific at Cheyenne; that the road was constructed as authorized by these acts of congress, and that the defendants detain from the plaintiff the possession of the premises which, prior to the commencement of the action, it demanded from them.

The determination by the court of the facts upon the issue raised by the first defense was, as we have shown, in conformity with the decisions of the supreme court of the United States. The remaining question is whether the court erred in its ruling sustaining the company's demurrer to the second defense, which pleaded the statute of limitations. The district court in sustaining this demurrer followed the decisions of the United States supreme court. In *Kindred v. U. P. R. R. Co.*, 168 Fed. 653, 94 C. C. A. 112, decided by the circuit court of appeals, it is said:

"It was conclusively determined by the act of congress that a right of way 400 feet in width was essential to the performance of the public duties assumed by the grantee upon its acceptance of the grant. No part of that right of way could be alienated without the consent of congress, nor lost by laches or acquiescence. It became in a sense a national public highway, and private encroachments upon it could be neither strengthened nor confirmed by lapse of time."

This case was appealed to the Supreme Court of the United States, *Kindred v. U. P. R. R. Co.*, 225 U. S. 582, 56 L. Ed. 1216, 32 S. C. Rep. 780, where on page 597, it is said:

"At an early stage of the case it appears to have been contended that the appellants acquired title to parts of the right of way by adverse possession, but as the contention is expressly abandoned in the brief, evidently in view of the ruling in *Northern Pacific Railroad Co v. Smith*, 171 U. S. 267, 43 L. Ed. 157, 18 S. C. Rep. 794, and *Northern Pacific Railway Co. v. Ely*, 197

U. S. 1, 49 L. Ed. 639, 25 S. C. Rep. 302, it need not be considered.''

In *Northern Pacific Railway Co. v. Ely,* 197 U. S., at page 5, we find the following:

''On the fourth day of May, 1903, the decision of this court in *Northern Pacific Railway Company v. Townsend,* 190 U. S. 267, 47 L. Ed. 1044, 23 S. C. Rep. 671, was announced. We there ruled that individuals could not for private purposes acquire by adverse possession, under a state statute of limitations, any portion of a right of way granted by the United States to a railroad company in the manner and under the conditions that the right of way was granted to the Northern Pacific Railroad Company.''

In *Northern Pacific Railway Co. v. Townsend,* 190 U. S., at page 272, it is said:

''Congress having plainly manifested its intention that the title to and possession of the right of way should continue in the original grantee, its successors and assigns, so long as the railroad was maintained, the possession by individuals of portions of the right of way cannot be treated without overthrowing the act of Congress as forming the basis of an adverse possession which may ripen into a title good as against the railroad company.''

So it is plain that prior to June 24, 1912, an individual could not acquire title to any portion of the 400 foot right of way by the statute of limitations or adverse possession, and that the judgment of the lower court on this issue was correct. The judgment in the lower court was rendered in March, 1909, and the case was docketed here in September, 1909. June 24, 1912, while the case was pending here on appeal, Congress passed an act which among other things provides:

''That in all instances in which title or ownership of any part of said right of way heretofore mentioned

is claimed as against said corporations, or either of them, or the successors or assigns of any of them, by or through adverse possession of the character and duration prescribed by the laws of the state in which the land is situated, such adverse possession shall have the same effect as though the land embraced within the line of said right of way had been granted by the United States absolutely or in fee instead of being granted as a right of way.

"That any part of the right of way heretofore mentioned which has been, under the law applicable to that subject, abandoned as a right of way is hereby granted to the owner of the land abutting thereon."

In November, 1912, supplemental briefs were filed by appellants' counsel conceding that at the time of trial, title to no part of the right of way could be acquired by adverse possession or the statute of limitations. But it is now contended that the 1912 act of Congress removes all restrictions against acquiring title by the statute of limitations or adverse possession, not only as to the future, but also regarding the past.

A majority of the court are of the opinion the 1912 statute applies to this case while here on appeal, which opinion is based on the following authorities: *United States v. Schooner Peggy,* 1 Cranch. 103, 2 L. Ed. 49; *Cooley's Const. Lim.,* § 469, N. 5; 3 Cyc. 407; *Board v. Glover,* 160 U. S. 170, 40 L. Ed. 382, 16 S. C. Rep. 321; same case on rehearing, 161 U. S. 101, 40 L. Ed. 632, 16 S. C. Rep. 492; *Dinsmore v. Company,* 183 U. S. 115, 46 L. Ed. 111, 22 S. C. Rep. 45; *American Co. v. City,* 119 Fed. 691, 55 C. A. 328; *Day v. Day,* 22 Md. 530; *Price v. Nesbitt,* 29 Md. 263; *Meloy v. Scott,* 83 Md. 375, 35 Atl. 20; *Chesapeake Co. v. Western Co.,* 99 Md. 570, 58 Atl. 34; *Ferry v. Campbell,* 110 Ia. 290, 81 N. W. 604, 50 L. R. A. 92; *Simpson v. Stoddard County,* 173 Mo. 421, 73 S. W. 700; *Vance v. Rankin,* 194 Ill. 625, 62 N. E. 807, 88 Am.

St. 173; *K. P. Ry Co. v. Twombly,* 100 U. S. 78, 25 L. Ed. 550. They are also of the opinion it is controlling, and the case should be reversed, and judgment entered here in favor of appellants.

The writer does not agree with the court as to that part of the opinion which decides that the statute of 1912 applies to this case here on appeal. I am of the opinion the case is here for the purpose of reviewing the judgment of the lower court, to reverse which, we must find prejudicial error. The judgment of the lower court is in strict conformity with the decisions of the supreme court of the United States, and therefore, when rendered, was not erroneous. In my judgment, the cases cited do not support the opinion of the court. The leading case, *U. S. v. Schooner Peggy,* 1 Cranch. 103, 2 L. Ed. 49, has no similarity and its reasoning cannot be applied to the facts and conditions here existing. That decision was based upon a treaty between the United States and France, and in the opinion the chief justice said:

"It is the general truth that the province of an appellate court is only to inquire whether a judgment *when rendered,* was erroneous or not. * * * It is true that in mere private cases a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of the parties."

The Maryland cases, in my opinion, are the only ones cited which are apparently in point, and they fairly illustrate a slavish adherence to precedent. They purport to be based on the *Schooner* case, and quote an isolated paragraph therefrom as authority for their contention, notwithstanding the case bears no similarity in fact or principle to those in which it is cited. It is a mis-application of a mis-conceived authority. The case of *K. P. Ry Co. v. Twombly,* 100 U. S. 78, 25 L. Ed. 550, instead of supporting the opinion of the court, it seems

to me to be directly contrary. It says in the syllabus, "Where no errors are found in the record, all this court can do is to affirm the judgment." I am authorized to say that Mr. Justice Gabbert concurs in this view.

The judgment of the lower court is reversed, and judgment will be entered here in favor of appellants.

*Reversed.*

Decision *en banc.*