BARNES et al. v. SOUTHERN PAC. CO.*

MULVIHILL et al. v. SOUTHERN PAC. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 22, 1926.)

No. 4851.

1. Public lands ⟲92—Railroad cannot divest itself by sale or abandonment of portions of right of way granted by Congress (Act July 27, 1866, § 18 [14 Stat. 299]; Act March 3, 1871 [16 Stat. 573]).

Southern Pacific Railroad, which has always operated its line, cannot divest itself of title by sale or abandonment to adverse user of land within its right of way, acquired under Act July 27, 1866, § 18 (14 Stat. 299), and Act March 3, 1871 (16 Stat. 573).

2. Public lands ⟲92—Grant of right of way to railroad held absolute and in praesenti, and subsequent patentee took subject thereto (Act March 3, 1871 [16 Stat. 573]).

Grant of right of way to Southern Pacific Railroad under Act March 3, 1871 (16 Stat. 573), was absolute and in praesenti, and patentee, subsequently acquiring parcel within right of way, took subject to that right.

3. Railroads ⟲131—Railroad held authorized to lease its road to another company (St. Cal. 1880, p. 21).

Under St. Cal. 1880, p. 21, railroad held authorized to lease its road to another railroad company.

4. Statutes ⟲113(3)—State statute, authorizing railroad to lease its road, held not invalid, as embracing subjects not expressed in title (St. Cal. 1880, p. 21; Const. Cal. art. 4, § 24).

St. Cal. 1880, p. 21, authorizing railroad corporations, domestic and foreign to lease all or part of railroad to other corporations, held not violative of Const. Cal. art. 4, § 24, requir-

*Rehearing denied January 31, 1927.

ing every act to embrace. but one subject, expressed in its title.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Walter C. Lindley, Judge.

Actions by the Southern Pacific Company against Charles J. Barnes and another, and by the Southern Pacific Company and another against Margaret Mulvihill and another. Judgment for Southern Pacific Company in both cases, and defendants bring error. Affirmed.

Gurney E. Newlin and A. W. Ashburn, both of Los Angeles, Cal., for plaintiffs in error.

Frank Thunen, of San Francisco, Cal., and W. D. Gilbert, of Los Angeles, Cal., for defendants in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. The history of these actions may be gathered from the statement in Barnes et al. v. Southern Pacific Co., 300 F. 481. In that action the Southern Pacific Company sought to recover from the defendants exclusive possession of certain parcels of land described as part of the railroad right of way of 200 feet in width, granted by Act of Congress approved March 3, 1871 (16 Stat. 573). Barnes and wife pleaded abandonment prior to the time of making a homestead entry on the so-called Barnes land, abandonment subsequent to filing a homestead declaration and before issuance of patent, and subsequent to the issuance of the patent. We held that it was error for the District Court to grant the motion of the railroad company for judgment on the pleadings, and reversed the judgment. Our ruling was based upon the plea of defendants denying that the Southern Pacific Company owned or was entitled to possession of any right of way, or that it acquired the right of way by act of Congress referred to in the complaint, or that the railroad company was entitled to the exclusive, or any, possession of the whole or any part of the land described in the complaint, and that the plaintiff railroad company was the successor of the Southern Pacific Railroad Company of California.

After remand by this court the Southern Pacific Company filed an amended complaint substantially like the original. Defendants Barnes and wife answered, setting up abandonment as before. As the Mulvihill Case was generally similar to the Barnes Case, they were tried together before a jury. After the introduction of evidence on both sides, the court granted the motion of the Southern Pacific Company for a directed verdict in its favor and against the defendants in both cases. From judgments entered pursuant to the verdict, writs of error were taken.

On the trial counsel for the Railroad Company cited section 18 of the Act of Congress approved July 27, 1866 (14 Stat. 299), where it was enacted that the Southern Pacific Railroad Company, a California corporation, was authorized to connect with the Atlantic & Pacific Railroad, formed under the act referred to at such point near the boundary line of the state of California as should be deemed most suitable for a railroad line to San Francisco, and in aid of its construction should have similar grants of land subject to all the conditions and limitations provided for in the act. Counsel also cited section 23 of the Act of March 3, 1871, supra, which is as follows:

"Sec. 23. That, for the purpose of connecting the Texas Pacific railroad with the city of San Francisco, the Southern Pacific Railroad Company of California is hereby authorized (subject to the laws of California) to construct a line of railroad from a point at or near Tehachapa Pass, by way of Los Angeles, to the Texas Pacific railroad at or near the Colorado river, with the same rights, grants, and privileges, and subject to the same limitations, restrictions and conditions as were granted to said Southern Pacific Railroad Company of California, by the Act of July twenty-seven, eighteen hundred and sixty-six: Provided, however, that this section shall in no way affect or impair the rights, present or prospective, of the Atlantic & Pacific Railroad Company or any other railroad company."

Plaintiff below introduced evidence that the Southern Pacific Railroad Company accepted the grant in the Act of March 3, 1871, and counsel stipulated that Southern Pacific Railroad Company was by successive consolidation merged into a corporation styled Southern Pacific Railroad Company, which said last-mentioned corporation is the Southern Pacific Railroad Company named in the complaint herein. The charter of the Southern Pacific Company, a Kentucky corporation formed in 1884, was introduced and it was stipulated that the company was qualified to do business in California. Plaintiff also introduced a 99-year lease dated February 10, 1885, from the Southern Pacific Rail-

road Company to the Southern Pacific Company. Defendants admitted that the railroad had been and was being operated by the Southern Pacific Company, but made such admission with the reservation that it did not include an admission of possession by the plaintiff below of the demanded parcels of land.

Defendants' testimony was that the railroad was built across the tracts involved in 1874 and 1875, and operated soon thereafter; that within a year or two after original construction right of way fences were built, inclosing a right of way of 100 feet in width; that the fences extended over occupied and unoccupied lands and have never been moved; that the railroad company never has made use of the parcels of land demanded; that it constructed a telegraph line and put poles within the 100-foot limit, but later placed them so that the arms would not extend over the fenced lines; that the Mulvihill parcel was occupied prior to the construction of the railroad, and was used by the successors of the original settler without objection on the part of the railroad company; that Barnes took possession of the Barnes parcel a few years prior to 1911; that both parcels have been improved.

The court rejected defendants' offer of a deed dated February 11, 1871, by one Chappelle to the Southern Pacific Railroad Company, conveying a strip of land then being the 100-foot strip included within the right of way fences of the company, and upon and over which the plaintiff railroad is now maintained and operated through or adjacent to the Mulvihill property. Counsel for the defendants stated that the purpose was to show that when the deed was made the Southern Pacific Railroad Company recognized the rights of the settlers and that it then required only one hundred feet as a right of way. The court also excluded evidence tending to show that the railroad company fenced off everything outside of the 100-foot strip in the locality of the lands involved, and that whenever it acquired a piece of the right of way it took a deed to a parcel one hundred feet in width. Such offer was made with the contention that the railroad company intended throughout the whole of its line to hold only 100 feet of right of way, and that such intent obtained with respect to the particular parcels herein affected when nonuser occurred. The court also overruled defendants' offer of a lease made in 1915 between the Southern Pacific Company and D. Mulvihill (husband of defendant Margaret Mulvihill

and father of defendant Frank Mulvihill), wherein the company leased for cultivation purposes a part of the fenced strip of land which is designated as its right of way; also rejected an offer of a lease made by the railroad company to Frank Mulvihill, dated in 1922, for cultivation purposes, the lease having attached to it a map showing the railroad right of way to be a strip 100 feet wide only where the railroad crossed the Mulvihill lands; also denied an offer of a deed from D. Mulvihill and wife to Southern Pacific Railroad Company, conveying one of the parcels involved in this suit, together with other lands; also overruled offers to show a purchase by the plaintiff from one Bucher in 1906 a tract of land adjoining the right of way fence and lying between the Barnes and Mulvihill parcels. Defendants' position was that at the time of the construction of the railroad the land described in the deed was public domain and that a repurchase by the company from Bucher could only have been upon the theory that title to the land had theretofore been lost by abandonment. Other offers of evidence of purchases of tracts in the neighborhood of the lands involved were also rejected.

The rulings of the District Court harmonize with the expressions of the judge that the grant of the railroad right of way over public lands was for the benefit of the public; that the railroad company operated the railroad for the benefit of the public and became a trustee; that the land granted to the railroad company could not be sold by the company, but must be held for public purposes for which it was conveyed; that no one could acquire any title by adverse possession as the land must be preserved and must remain of the character declared by the government.

[1] The essential question is whether the railroad company, which has always operated its line, could divest itself of its title to the several small strips included within the right of way acquired under the grant of Congress. The answer must be that it could not. In Northern Pacific Railway v. Townsend, 190 U. S. 267, 23 S. Ct. 671, 47 L. Ed. 1044, in a controversy as to the validity of an asserted title by adverse possession to a part of the right of way in Minnesota granted to the Northern Pacific Railway by Act of July 2, 1864 (13 Stat. 365), it appeared that the line crossed a tract which was then public domain, not reserved or filed upon. In 1878 and 1882 homestead entries were initiated upon the lands above referred to, and in 1865 and 1889 patents were issued to those

lands to persons who had cultivated them up to the line of the ordinary and snow fences of the railroad company, situated respectively 50 and 100 feet from the center of the track, such occupancy continuing a sufficient time to treat title by adverse possession under the limitations statutes of Minnesota. The railroad company demanded possession of the portion of the lands which were within the granted right of way and after refusal of the demand brought actions in ejectment in the state courts, where, eventually the settlers prevailed.

Upon review by the Supreme Court of the United States, the court conceded the adverse possession and its efficacy under the state law as against the railroad right of way and determined the sole question whether, in view of the act of Congress, an asserted title by adverse possession could successfully be made with respect to the property in controversy. It was held that, although there was a present grant, it was yet subject to the conditions stated in the act and to those necessarily implied, such as that the road should be used for the purpose designated. Chief Justice White said: "In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use would be to allow that to be done by indirection which could not be done directly."

The court added: "Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by Congress, for, as said in Northern Pacific Railroad Co. v. Smith, 171 U. S. 261, 275 [18 S. Ct. 794, 43 L. Ed. 157], speaking of the very grant under consideration: 'By granting a right of way four hundred feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes."

And as if to emphasize the positiveness of the decision, it was further said: "Congress having plainly manifested its intention that the title to and possession of the right of way should continue in the original grantee, its successors and assigns, so long as the railroad was maintained, the possession by individuals of portions of the right of way cannot be treated without overthrowing the act of Congress as forming the basis of an adverse possession which may ripen into a title good as against the railroad company."

The reasoning of that case was followed by this court in Holland v. Northern Pacific Ry., 214 F. 920, 131 C. C. A. 216, where Holland and others were owners of certain property in the city of Spokane, abutting on a strip of land about 225 feet wide, occupied in part by the tracks of the Northern Pacific Railway Company and intersected the cross-streets. In 1912 the city required the railway company to separate its grade from the street grade. The company proposed to do this in a certain way, and to prevent the creation of the obstruction proposed in front of their property in what they contended was a public street the owners brought suits. The so-called Railroad street was within a part of a section which lay approximately 125 feet on one side of the center line of the main track of the railway company. Title to the whole of the section was acquired under the provisions of the Northern Pacific Land Grant Act of July 2, 1864.

The court, after holding that the strip of land involved was part of the right of way granted by section 2 of the Act of Congress of July 2, 1864, supra, held that lands falling within the provisions of section 2 were acquired upon the implied condition that they be used for railroad purposes, and that generally the grantee was without power to defeat the designated purpose of the grant by voluntary alienation of title or by abandoning possession to an adverse claimant. In support of that proposition the court cited Northern Pacific Railway v. Townsend, supra, where it was held that the substantial consideration inducing the grant for a right of way was the perpetual use of the land for the legitimate purpose of the railroad, "just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way."

As we have already held in the former consideration of the present case, the court

there recognized that there might be an abandonment or forfeiture through nonuser, but that where the route has never been changed title to the right of way was held as granted by the act of Congress. This court, speaking through Judge Dietrich, said: "Congress has not authorized the disposition of unused portions of the right of way. The power of the railroad company to alienate, as well as the power of others to acquire, any part thereof, is measured, not by what can be spared from railroad uses, but by what is required to meet such needs of the public or of individuals as fall within the scope of the principle already discussed. Privileges conferred by revocable licenses are, of course, excluded. In such cases the railroad company never loses its right to possession and control."

The court also expressed the view that the part of the right of way involved in that case could not be diverted from the purpose for which it was granted and that no doctrine of estoppel could be successfully invoked as against the railroad company. "Neither the acts nor the acquiescence of the grantee of the government grant can operate to defeat the will of the grantor," said the court. "Whatever may be the equities in favor of plaintiffs, we cannot give them place without violating the integrity of the grant. * * *. By the Act of April 28, 1904 (33 Stat. 538), conveyances theretofore made by the railroad company of portions of the right of way were validated; but with the proviso that no such conveyance should have the effect of diminishing the right of way to less than 100 feet upon either side of the center of the main track. Thus Congress has expressly reaffirmed its purpose that the right of way, now to a width of 200 feet, shall be held intact, and this purpose it is the duty of the court to sustain." That case presented stronger grounds for holding that there was abandonment than does the instant one, for there the railroad company indorsed a townsite plat of an addition within an odd section to the city of Spokane; the plat designated a street called Railroad street along either side of its main track.

Counsel for plaintiffs in error cite our former opinion as holding that the plea of abandonment as presented was good. As the pleadings then stood, we believed there was an issue of abandonment; but we did not intend to depart from the positive views of the Supreme Court as expressed in Northern Pacific Ry. v. Townsend, supra; Northern Pacific Ry. v. Ely, 197 U. S. 1, 25 S. Ct. 302, 49 L. Ed. 639; Holland v. Northern Pacific Ry., 214 F. 920, 131 C. C. A. 216; Denver & Rio Grande v. Mills, 222 F. 481, 138 C. C. A. 77, which were cited. See, also, Great Northern Railroad v. Steinke, 261 U. S. 119, 43 S. Ct. 316, 67 L. Ed. 564.

[2] There is a contention that the title of the patentee to the Mulvihill land did not vest by relation as of the date of the original settlement of the land. There was evidence that the Mulvihill parcel was improved with a house and barn and was occupied by one Snow and his family at and prior to the construction of the railroad thereover. It is undisputed, however, that at that time the land was unsurveyed. A plat of the survey was filed in the Land Office October 5, 1876, and the declaratory statement of one Horton was filed October 12, 1876. The court refused defendants' offer of proof that Snow originally settled upon the land before March 3, 1871, and that he made his settlement, intended to perfect as soon as he could, a preemption right to the land, that his possessory rights passed to Horton, who, within three months after the filing of the survey of the land, made a declaratory statement, and thereafter in due course obtained patent from the government under which the Mulvihills deraign title. Upon the authority of City of Reno v. Southern Pacific Co. (C. C. A.) 268 F. 751, and the cases therein cited, especially Railroad Co. v. Baldwin, 103 U. S. 426, 26 L. Ed. 578, we hold that the grant to the railroad company in the act heretofore cited was absolute and in præsenti, and that one who subsequently acquired a parcel of such land took it subject to that right.

[3] Plaintiffs in error assert that it was error on the part of the District Court to hold valid the lease from the Southern Pacific Railroad Company to the Southern Pacific Company. It is said that there is no statutory authority for making such a lease; and that it was illegal because opposed to public policy. The state of California, by an Act of the Legislature of April 3, 1880 (St. 1880, p. 21), extended to railroad corporations, domestic and foreign, the right to enter into contracts with one another whereby one might lease from the other the whole or any part of its railroad. There was, therefore, clear statutory authority by the California legislation.

We pass the question of the right of plaintiffs in error, who are strangers to the contract of lease, to assail the validity of the contract (O.-W. R. & N. Co. v. Wilkinson [C. C.] 188 F. 363), and merely say that, so far as we are advised, during the many years that have elapsed since the lease referred to

was executed, there has been no judicial ruling that its terms contravene public policy. In United States v. Southern Pacific Co. (1922) 259 U. S. 215, 42 S. Ct. 496, 66 L. Ed. 907, the government, among other contentions, urged that point, and, while the court held the lease to be illegal, the decision rested upon the ground that the lease was made in violation of the provisions of the Sherman· Law, in that it ran to a competitor of the lessor corporation.

[4] It is also suggested that the Act of the California Legislature, passed April 3, 1880, was unconstitutional, because it violated section 24 of article 4 of the California Constitution, which provides that every act shall embrace but one subject, which subject shall be expressed in its title. The Act of April 3, 1880, is entitled "An act permitting and authorizing railway and other corporations, organized under the laws of this state, or of any state or territory of the United States of America, or any act of Congress of the United States of America, to do business in this state on equal terms."

This' last contention, like the preceding one, seems never to have received judicial sanction, and it is our opinion that neither point is entitled to sufficient consideration to permit the disturbance of a status that has been acquiesced in for over 40 years.

The judgments are affirmed.