[Civil No. 2599. Filed October 17, 1927.]

[260 Pac. 195.]

THE RICHARDSON REAL ESTATE MINING & COMMERCIAL CORPORATION, a Corporation, Appellant, v. THE SOUTHERN PACIFIC COMPANY, a · Corporation, and THE NEW MEXICO & ARIZONA RAILROAD COMPANY, a Corporation, Appellees.

Mr. Frank H. Hereford and Mr. E. T. Cusick, for Appellant.

Mr. Francis M. Hartman, for Appellees.

LOCKWOOD, J.—This is an action brought by the Richardson Real Estate Mining and Commercial Corporation, hereinafter called appellant, against the Southern Pacific Company, a corporation, and the New Mexico and Arizona Railroad Company, a corporation, hereinafter called appellees, to quiet title to two strips of land lying one on each side of the railroad operated by the Southern Pacific Company and within the town site of Patagonia, Santa Cruz county, Arizona. Appellees answered, setting up their claim to the premises and asking that their title be quieted. There is practically no dispute as to the facts, and they may be briefly stated, so far as is necessary to the decision of the case, as follows:

The New Mexico & Arizona Railroad Company was incorporated in 1882 under the laws of the

territory of Arizona, and was duly authorized by such laws and its articles of incorporation to build a railroad from Benson to Nogales over certain lands, among them being the NW. 1/4 of section 7, township 22 south, range 16 east, G. & S. R. B. & M. The railroad company shortly thereafter filed with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization, in all respects in compliance with the act of Congress entitled "An act granting to railroads the right of way through the public lands of the United States," and approved March 3d, 1875 (43 U. S. C. A., §§ 934–939; U. S. Comp. Stats., §§ 4921–4926). We shall hereafter refer to this act as the act of 1875. In October, 1882, after a survey and location on the ground, the railroad company filed with the Secretary of the Interior a map showing such location and line of railroad which was, on or about that date, approved by him. The railroad was immediately constructed substantially on the lines shown on the map, and ever since has been operated by one or the other of appellees; the Southern Pacific Company having at a later date leased it from the New Mexico and Arizona Railroad Company. At the time the right of way map was filed and the railroad was constructed, all of section 7 above described, except a very small portion not involved in this action, was vacant and unoccupied public domain of the United States. Some four years thereafter one James R. Ashburn, the predecessor in interest of appellant, made a homestead entry on the NW. 1/4 of said section 7, and patent was issued to him in the due course of time therefor; no exception of the railroad right of way being noted in his patent. The land involved in this controversy consists of two strips lying not less than fifty nor more than one hundred feet from the center of the railroad track of appellees and parallel thereto. During a long period of time,

in fact almost since the building of the railroad, the appellees have actually used and claimed only fifty feet on each side of the center of the track for a right of way, and until about the time of the inception of this suit have always dealt with the land in question as though they had no interest thereto by reason of its being within the congressional grant. For more than fourteen years prior to the commencement of this action appellants have used, occupied, and claimed the land in controversy, have erected various improvements thereon, paid taxes on the property, laid out, platted, and legally established the town of Patagonia, and included therein the ground in question, under the belief that the railroad company had no claim or interest to said land, all of which appellees well knew. The question is whether on this state of facts appellees or appellant were entitled to have the title quieted to the premises in controversy.

There are many assignments of error, but the legal questions raised for our determination may be stated as follows: First, what was the extent of the right of way the New Mexico and Arizona Railroad Company acquired under the act of 1875? Second, if the portion so acquired was one hundred feet in extent on each side of the center of the track of appellees, have appellees as a matter of law abandoned any portion thereof? So far as the first question is concerned, we think it has been determined for us by the Supreme Court of the United States in the cases of *Northern Pac. R. Co.* v. *Smith,* 171 U. S. 260, 43 L. Ed. 157, 18 Sup. Ct. Rep. 794, and *Northern Pac. R. Co.* v. *Townsend,* 190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671. In those cases, it is true, the construction of the Right of Way Act of July 2d, 1864 (13 Stat. 365), was involved, but the language pertinent to the issues

of this case in the act of 1864 has the same legal effect, in our opinion, as in the act of 1875. The first act reads as follows:

"That the right of way through the public lands be, and the same is hereby, granted; . . . said way is granted to said railroad *to the extent of two hundred feet in width on each side of said railroad. . . .*" (Italics ours.) Section 2.

The language of the act of 1875 is:

"The right of way through the public lands of the United States is [hereby] granted to any railroad company . . . *to the extent of one hundred feet on each side of the central line of said road.*" (Italics ours.) 43 U. S. C. A., § 934 (U. S. Comp. Stats., § 4921).

It will be seen the language determining the extent of the right of way is practically identical, except that in one case it was two hundred feet and in the other one hundred feet on each side of the road. In the Smith case above cited, it was contended, as in this, that the railroad company had only used and occupied a certain portion of its right of way. The court, in passing upon the question, said:

"The finding of the trial court, that only 25 feet in width has ever been occupied for railroad purposes, is immaterial. By granting a right of way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance. . . ."

Later in the Townsend case, discussing the Smith case, *supra,* and after quoting therefrom a portion of the language we have just used, the court said:

"Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The

whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes. To repeat, the right of way was given in order that the obligations to the United States, assumed in the acceptance of the act, might be performed. Congress having plainly manifested its intention that the title to, and possession of, the right of way should continue in the original grantee, its successors and assigns, so long as the railroad was maintained, the possession by individuals of portions of the right of way cannot be treated without overthrowing the act of Congress, as forming the basis of an adverse possession which may ripen into a title good as against the railroad company.''

The court excepts from its rulings the right of the state to act under its police power, but states that such power is in no sense analogous to a claim of adverse ownership for private use. This court, in the case of *Van Dyke* v. *Arizona East. R. Co.*, 18 Ariz. 220, 157 Pac. 1019, on a question involving the construction of the act of 1875, said:

''Under the law, if the appellee is entitled to any right of way whatever, it is entitled to 100 feet on each side of the center of its track. Congress itself has fixed the amount of the grant and determined what amount was reasonable and necessary for a railroad right of way. This was properly a legislative function and cannot be reviewed by the courts. Congress had the power to give a right of way as wide or narrow as it saw fit. *Having said that it should be 100 feet on each side of the center of the track, it may be no more nor less*''—citing cases. (Italics ours.)

We therefore hold that the right of way granted the New Mexico & Arizona Railroad Company was 100 feet on each side of the center of the track, regardless of whether it utilized that amount of land at any time, or whether others may have been in

possession of portions of it, no matter for what period, and that appellant may not establish title to said lands on the theory that the right of way originally amounted to less than the 100 feet on each side as above set forth.

But, it is contended, even admitting that the original right of way was the full 100 feet as above, appellees had abandoned all of the right of way originally granted in excess of 50 feet on each side of the track, and that under the Act of March 8th, 1922 (43 U. S. C. A., § 912 [U. S. Comp. Stats., § 4917A]), the amount so abandoned immediately passed to appellants. The pertinent parts of the said act of 1922 read as follows:

"That whenever public lands . . . have been . . . granted to any railroad company for use as a right of way . . . and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by act of Congress, then and thereupon all right, . . . of the United States in said lands shall . . . be transferred to and vested in any person, . . . to whom . . . tilte of the United States may have been . . . granted. . . . "

It is claimed by appellees, however, that the act above quoted is only prospective and not retrospective; that any forfeiture or abandonment of a right of way must be declared by a court of competent jurisdiction or by act of Congress; that by the provisions of the Transportation Act, approved February 28th, 1920 (49 U. S. C. A., § 71 et seq. [U. S. Comp. Stats., § 10071¼ et seq.]), a railroad company cannot abandon any part of its right of way without permission of the Interstate Commerce Commission, and the various regulating bodies of the states affected, and that the statute only contemplates cases in which the railroad company has ceased to use the entire

width of the right of way, and not merely a part thereof.

There are some six cases cited to us by counsel for appellant which he claims sustain his position in regard to the right of a railroad company to abandon a portion of its right of way. We have read each and all of them with meticulous care.

The case of *Wolff & Co.* v. *Canadian Pac. Ry.*, 123 Cal. 535, 56 Pac. 453, does not deal with the question here involved, but merely discusses the general meaning of the word "abandonment."

In the case of *Spokane, etc.*, v. *W. & G. N. Ry. Co. et al.*, 219 U. S. 166, 55 L. Ed. 159, 31 Sup. Ct. Rep. 182, the facts show an abandonment of the entire width of the right of way over a length of more than 25 miles, if there were any abandonment at all, and not of merely a portion of the width of the right of way granted, and the Supreme Court held on those issues it was for the local court to determine the facts.

The case of *Great Northern Ry. Co.* v. *Steinke*, 261 U. S. 119, 67 L. Ed. 564, 43 Sup. Ct. Rep. 316, holds that, with the consent of the Secretary of the Interior, a railroad company may change the location of station grounds from one place to another, and affirms the doctrine that neither laches on the part of the company nor any local statute of limitation can invest individuals with any interest in the tract or a right to use it for private purposes without the sanction of the United States.

The case of *Denver & R. G. R. Co.* v. *Mills* (C. C. A.), 222 Fed. 481, was one where the railroad company had relocated its line for a distance of at least 25 miles and removed entirely the rails and ties from the old line, abandoning the entire right of way in controversy and not merely a part thereof.

The case of *Holland* v. *Northern Pac. Ry. Co.* (C. C. A.), 214 Fed. 920, did deal with the alleged

abandonment of a portion of the right of way, and the court held therein that the right of way granted by Congress must remain intact, and that the railroad company had no power to defeat the purpose of the grant by Congress, either by a voluntary alienation or by abandoning possession of a portion of the right of way.

There remains only the case of *Barnes* v. *Southern Pacific,* first reported in (C. C. A.), 300 Fed. 481, again and later in (C. C. A.), 16 Fed. (2d) 100. In the first case the answer set up:

"That prior to the year 1882 the said railroad company ceased to use or occupy the said right of way across the quarter section [above] described, except to the extent of 100 feet, with 'an intent to abandon all of said right of way through said section lying beyond said 50 feet from the said center line of said railroad.' "

It will thus be seen that the facts alleged are very similar to those in the present case, so far as an abandonment is concerned. The court, in passing on the case, said:

"The doctrine established, as applied to the present case, is that, although title to the land within the right of way could not be acquired against the railroad company, grantee, by limitation, still, as the implied condition upon which the grant was made, user and retention for legitimate railroad purposes must exist, in order that the limited fee may be held, it should follow that there can be an abandonment of right of way. What specific acts of the railroad company may constitute abandonment need not be discussed, further than to say the question generally is largely one of intention, to be established by acts which clearly indicate nonuser and a purpose on the part of the railroad company to give up the use of the right of way or part thereof."

Were this the last expression of the court, it would indeed be an authority in support of appellant's posi-

tion. The case, however, was remanded to the trial court and there tried on pleadings practically the same as those appearing in the original case. Judgment was there rendered for the railroad company and against defendant's claim of abandonment. On the second appeal, the circuit court of appeals, in affirming the judgment of the district court, stated in part as follows:

"The rulings of the District Court harmonize with the expressions of the judge that the grant of the railroad right of way over public lands was for the benefit of the public; . . . that the land granted to the railroad company could not be sold by the company, but must be held for public purposes for which it was conveyed; that no one could acquire any title by adverse possession as the land must be preserved and must remain of the character declared by the government.

"*The essential question is whether the railroad company, which has always operated its line, could divest itself of its title to the several small strips included within the right of way acquired under the grant of Congress. The answer must be that it could not.* . . .

"As we have already held in the former consideration of the present case, the court there recognized that there might be an abandonment or forfeiture through nonuser, *but that where the route has never been changed title to the right of way was held as granted by the act of Congress.* This court, speaking through Judge DIETRICH, said: 'Congress has not authorized the disposition of unused portions of the right of way. The power of the railroad company to alienate, as well as the power of others to acquire, any part thereof, is measured, not by what can be spared from railroad uses, but by what is required to meet such needs of the public or of individuals as fall within the scope of the principle already discussed. . . . '

"The court also expressed the view that the part of the right of way involved in that case could not be diverted from the purpose for which it was

granted. . . . 'Neither the acts nor the acquiescence of the grantee of the government grant can operate to defeat the will of the grantor,' said the court. . . .

"Counsel for plaintiffs in error cite our former opinion as holding that the plea of abandonment as presented was good. As the pleadings then stood, we believed there was an issue of abandonment; but we did not intend to depart from the positive views of the Supreme Court as expressed in *Northern Pacific Ry.* v. *Townsend* [190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671]," and citing many other cases. (Italics ours.)

Reading the two opinions of the court together in the light of the cases cited approvingly by it in its last opinion, we are compelled to believe that on mature consideration it came to the conclusion that the only abandonment of a right of way permitted was when the entire width was abandoned as a result of the railroad ceasing its operations over that particular portion of the right of way; and that it is impossible for a railroad company, while still continuing its operations, either by voluntary alienation or nonuser, to lessen the width of its legal right of way beyond the limitations fixed by Congress in the grant establishing it. Such being the case, there could be and was no abandonment of right of way by appellees of the land in controversy in this case, since it is admitted that they have at all times continued the operation of their railroad over the right of way as originally established. Counsel for appellant has devoted a large portion of his brief to an able discussion of the exact nature of the title or right acquired by the railroad company to the right of way in question. We think, for the purposes of this case this is an academic question. If, as we have held, the right of way given to appellees, whether it be an absolute fee, a limited fee or a mere right of possession, was definitely fixed by Congress as 100 feet on each side of the center of the

track, and if, as we have held, the railroad company did not and could not abandon the portion of the right of way in question by any means while continuing the operation of its railroad as aforesaid, we cannot see what difference it makes as to the exact nature of its title. We realize the equities of appellant and its grantees, and that great hardship will be worked on innocent parties as a result of this action.

We are bound, nevertheless, to declare the law as it exists, regardless of its effect, and, in view of the repeated and definite decisions of the highest tribunal of the land on a question which is within its jurisdiction, we have no option but to affirm the judgment of the trial court, and it is so ordered.

ROSS, C. J., and McALISTER, J., concur.