516 P.2d 123 (1973)
ALLARD CATTLE COMPANY, a co-partnership, et al., Plaintiffs-Appellees,
v.
The COLORADO AND SOUTHERN RAILWAY COMPANY, Defendant-Appellant, and
The Colorado Central Railroad Company, and Union Pacific Denver and Gulf Railway Company in Larimer County, Colorado, and all unknown persons who claim any interest in the subject matter of this action, Defendants.
No. 72-202.
Colorado Court of Appeals, Div. I.
September 25, 1973.
Rehearing Denied November 6, 1973.
Certiorari Granted December 10, 1973.
Warberg & Mast, Sonja E. Warberg, D. Chet Mast, Fort Collins, for plaintiffs-appellees.
March, March & Sullivan, A. E. March, Jr., Fort Collins, John C. Street, Denver, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
This is an appeal by the defendant, The Colorado and Southern Railway Company, from a judgment in favor of plaintiffs, Allard Cattle Company et al., quieting title to portions of a right-of-way which had been granted the railroad by an act of Congress. The trial court found that the land in question had been abandoned by the defendant. We reverse.
The defendant railroad, as successor in title of the other named defendants, claims the land under a grant from the United States government made pursuant to the *124 General Railroad Right of Way Act of 1875, 43 U.S.C. §§ 934-939 (1970) (hereinafter referred to as the Act of March 3, 1875). That act provided for grants to railroads of rights-of-way 100 feet in width on each side of the railroad bed across public lands. The land in question in this case consists of the outer 50 feet on each side of the tracks, which lies outside fences erected by the railroad in compliance with C.R.S.1963, 116-8-2. Plaintiffs claim that the land outside these fences has been abandoned by the railroad, and that, therefore, plaintiffs have superior title based on United States government patents issued in 1885 and 1886 covering the quarter sections traversed by the right-of-way.
Defendant contends, first, that a railroad is legally incapable of abandoning property granted to it by an act of Congress and, second, that even if such abandonment were legally possible, the land in question was not in fact abandoned. We agree with the first contention of the appellant.
Early decisions of the United States Supreme Court consistently held that the width of a right-of-way granted by Congress cannot be diminished by conveyance, adverse possession, or abandonment. Northern Pacific Ry. v. Ely, 197 U.S. 1, 25 S.Ct. 302, 49 L.Ed. 639; Northern Pacific Ry. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044; Northern Pacific Ry. v. Smith, 171 U.S. 260, 18 S.Ct. 794, 43 L.Ed. 157. This rule was applied in a belief that Congress intended to create a buffer zone between railroad activities and the adjoining lands, and that the entire right-of-way granted was to be dedicated to the public purposes served by the railroad.
"`By granting a right-of-way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right-of-way is no longer needed for the use of the railroad, and title to it has vested in whomsoever chooses to occupy the same.... Congress having plainly manifested its intention that the title to, and possession of, the right-of-way should continue in the original grantee, its successors and assigns, so long as the railroad was maintained, the possession by individuals of portions of the right-of-way cannot be treated without overthrowing the act of Congress, as forming the basis of an adverse possession which may ripen into a title good as against the railroad company." Northern Pacific Ry. v. Townsend, supra, quoting Northern Pacific Ry. v. Smith, supra.

Thus, absent an act of Congress providing for the disposition of specific portions of rights-of-way granted by Congress, a third party may not acquire title to portions of such rights-of-way by adverse possession or by abandonment of lands.
In an early case dealing with railroad rights-of-way in Colorado granted under an act similar to the Act of March 3, 1875, a federal court held that such right-of-way may be abandoned where the entire right-of-way is relocated so that no part of the original grant is used for railroad purposes. Mills v. Denver & Rio Grande R. R., 198 F. 137 (D.Colo.1912), aff'd, 222 F. 481 (8th Cir. 1915). The defendant, however, argues that the width of the right-of-way cannot be narrowed by abandonment of the outer fringes, as long as the right-of-way continues to be used for railroad purposes. We agree.
Plaintiffs refer us to the case of Snow v. Union Pacific R.R., 55 Colo. 175, 133 P. 1037, in which the Colorado Supreme Court, relying on the Act of June 24, 1912, held that the outer fringes of a 400-foot right-of-way which had been granted by an act of Congress in 1862 had been abandoned.[1] However, that case is inapposite *125 because the statute relied on applied solely to the right-of-way in controversy in that case and provided:
"That any part of the right of way heretofore mentioned which has been, under the law applicable to that subject, abandoned as a right of way is hereby granted to the owner of the land abutting thereon." Act of June 24, 1912, ch. 181, 37 Stat. 138.
It can be argued that Congress consented to partial abandonment by a statute passed on March 8, 1922, covering the disposition of abandoned or forfeited railroad grants. 43 U.S.C. § 912 (1970). This act provides that:
"Whenever public lands of the United States have been or may be granted to any railroad company ... and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment... declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall... be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad...."
Thus, the issue arises as to whether or not the Act of March 8, 1922, has authorized the abandonment of the contested portions of the right-of-way.
Apparently the only case in which a court has considered the effect of the Act of March 8, 1922, in the context of the present dispute is Richardson Real Estate Mining & Commercial Corp. v. Southern Pacific Co., 32 Ariz. 491, 260 P. 195. There, the Arizona Supreme Court rejected the contention of the plaintiffs that the act permitted the state court to declare the outer fringes of the railroad right-of-way abandoned. The Arizona court distinguished Mills, supra, on the ground that in that case the railroad company had relocated its line and removed the rails and ties from the old railroad bed, thus abandoning the entire right-of-way in controversy and not merely a part thereof. Although the basis of the holding is unclear, the Arizona court in Richardson apparently interpreted the Act of March 8, 1922, to apply only in cases where the entire right-of-way has been abandoned, and not in cases where any part of the right-of-way has remained in use for railroad purposes. We agree with that interpretation of the statute.
The legislative history of the Act of March 8, 1922, supports this court's holding that the statute applies only to abandonment of the entire right-of-way including the roadbed. See H.R.Rep.No.388, 67th Cong., 2d Sess. (1922). There has been no such total abandonment in this case, and therefore the Act of March 8, 1922, does not apply.
Since this court finds the railroad legally incapable of abandoning the portions of the right-of-way in controversy, it is unnecessary to review the defendant's second contention that an abandonment has not been proven.
One final matter which was not argued by the parties should be noted. Both parties have assumed that the railroad's interest in the right-of-way is a "limited" or "determinable" fee. However, the United States Supreme Court has held that the interest granted to the railroad under the Act of 1875 is an easement and not a limited fee. Great Northern Ry. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L. Ed. 836. Thus, following the grant to the railroad in 1875, the United States retained the fee interest in the property. That fee, subject to the railroad's easement, was conveyed to plaintiffs' predecessor in title by patents issued in 1885 and 1886.
The judgment is reversed, and the cause remanded with directions to enter a decree *126 quieting title to the right-of-way in plaintiffs subject to the railroad's easement.
SILVERSTEIN, C. J., concurs.
PIERCE, J., dissents.
PIERCE, Judge (dissenting):
I respectfully dissent from the majority opinion. My principal disagreement with the majority concerns the proper interpretation of the Act of March 8, 1922, 43 U. S.C. § 912 (1970). Assuming that Congressional authorization of abandonment was necessary to permit the trial court to find an abandonment here, I believe that this Act is sufficient. The United States Supreme Court decisions relied on by the majority for the proposition that the railroad cannot abandon a portion of the width of its right-of-way are inapposite since they were decided prior to the enactment of that statute.
The Richardson case cited by the majority does not clearly deal with the effect of this statute, rather it appears to rely on prior decisions, particularly the decision in Barnes v. Southern Pacific R.R., 16 F.2d 100. In Barnes, the Act of 1922 was not in question and the court specifically stated: "Congress has not authorized the disposition of unused portions of the right-of-way."
It is my view that the legislative history of the Act of March 8, 1922, will not support the reading given it by the majority that only abandonment of the entire right-of-way was intended. There is nothing in the history of this Act that would indicate that it was the intent of Congress to codify the previously existing court-made law on this subject. I believe that the principal purpose for the statute was to assure that where a railroad right-of-way is abandoned or forfeited by a railroad, the land covered by the right-of-way would pass to the owner of the property traversed by the right-of-way, rather than reverting to the United States. This legislative clarification of the legal interests involved was enacted to counter the effect of earlier United States Supreme Court decisions holding that the railroad grants conveyed a limited or qualified fee with an implied condition of reverter in the event that the companies ceased to use the right-of-way for railroad purposes. As the majority has noted, the decision in Great Northern Ry. v. United States held that rights-of-way granted under the Act of 1875 were only easements and not limited fee interests. Thus, the major problem addressed by the statute (whether or not the United States has a possibility of reverter) is not in issue in our case. However, the statute does acknowledge that abandonments may be decreed by "courts of competent jurisdiction." There is no limitation in the Act to preclude the abandonment of only portions of the width of the right-of-way.
The majority attempts to distinguish Mills v. Denver Rio Grande R.R. on the ground that in that action the right-of-way had been abandoned in its entirety. However, this case is authority for the proposition that a railroad may abandon its right-of-way, even without the express authorization of Congress. Furthermore, it is difficult to perceive a significant difference between the abandonment of the entire width of the right-of-way and the abandonment of only a portion of the right-of-way. In both instances, the abandoned land is no longer used by the railroad, if it ever was.
The difference suggested by the majority between these two situations is that Congress intended the right-of-way to be wide enough to permit a buffer zone between the operation of the railroad and the surrounding lands. Therefore, it is argued that as long as the railroad operates its trains over the right-of-way, it is entitled to the full width of that right-of-way. This argument fails to meet the realities of the modern day railroad, particularly in light of today's ever-increasing needs for *127 economical use of all our lands. The report from the Committee of Public Lands on the Act of March 8, 1922, suggests that Congress was concerned with guaranteeing economical use of these lands when it stated:
"It seemed to the committee that the abandoned or forfeited strips are of little or no value to the government and that in case of lands in the rural communities, they ought, in justice, to become the property of the person to whom the whole of the legal subdivision has been granted or his successor in interest." H.R.Rep.No.217, 67th Cong., 1st Sess. set forth in S.Rep.No.388, 67th Cong. 2d Sess. 2 (1922).
Furthermore, the report of the Committee refers in several places to the abandonment or forfeiture of "any portions of such right-of-way" indicating that the legislative intent extended beyond the abandonment of the entire right-of-way. The buffer zone concept may have had validity in the age of the steam engine when numerous fires resulted from the daily operation of railroads, but in today's diesel age, this concept is no longer valid.
Furthermore, it is clear from the evidence in this action, that the "buffer zone" thought necessary by the railroad amounts only to the areas included within 50 feet from either side of the centerline of the track. The railroad built its fences along the right-of-way pursuant to C.R.S.1963, 116-8-2, at a distance of only 50 feet from the centerline of the tracks. While it is true that the railroad was acting pursuant to this statute in erecting the fences, there is nothing in the statute to prescribe the distance from the tracks for such fences.
The Congress has provided for the partial abandonment of railroad rights-of-way and since the evidence in this case was sufficient to justify the trial court's determination of an abandonment of those portions of the right-of-way outside of the 50-foot fence lines, I would affirm the judgment.
NOTES
[1] This ruling was reversed by the United States Supreme Court on the grounds that the Act of June 24, 1912, could have no retroactive effect and thus could not be applied in that case. Union Pacific R.R. v. Snow, 231 U.S. 204, 34 S.Ct. 104, 58 L.Ed. 184.