## No. C-454

Allard Cattle Company, a co-partnership, Martin R. Allard, George L. Allard, Eleanor K. Allard, Roxana E. Allard, and Ruth G. West v. The Colorado and Southern Railway Company and The Colorado Central Railroad Company, and The Union Pacific Denver and Gulf Railway Company in Larimer County, Colorado, and All Unknown Persons Who Claim Any Interest in the Subject Matter of this Action

(530 P.2d 503)

Decided November 18, 1974.     Rehearing denied December 9, 1974.

1

2

Warberg & Mast, Sonja E. Warberg, D. Chet Mast, for petitioners.

March, March & Sullivan, A. E. March, Jr., W. L. Peck, J. C. Street, for respondents.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Petitioners brought this action to quiet title in themselves as abutting landowners to a 50-foot strip of land lying on either side of a 100-foot right-of-way which is owned and maintained by respondent Railroad Company, hereafter referred to as "the railroad." The trial court determined that the railroad had abandoned the strip of land in question, and that title to the land, therefore, vested in the landowners. Holding that the railroad cannot legally diminish the width of its right-of-way by abandonment the Court of Appeals reversed the judgment of the trial court. 33 Colo. App. 39, 516 P.2d 123 (Pierce, J. dissenting). We granted a Writ of Certiorari. For the reasons set forth herein, we affirm the judgment of the Court of Appeals.

The defendant railroad, as successor in title of the other named defendants, claims the land under a grant from the United States government made pursuant to the General Railroad Right-of-Way Act of 1875, 43 *U.S.C.* §§ 934-939 (1970). The Act provided for grants to railroads of rights-of-way one hundred feet in width on

each side of the railroad bed across public lands. The land in question in this case consists of the outer 50 feet on each side of the tracks, which lies outside fences erected by the railroad in compliance with C.R.S. 1963, 116-8-2.

The central question is whether a railroad which receives a right-of-way by Congressional grant can legally abandon a portion of that right-of-way. Relying on *Mills v. Denver & R.G.R. Co.*, 198 F. 137 (D. Colo. 1912), *aff'd, Denver & R.G.R. Co. v. Mills*, 222 F. 481 (8th Cir.) and the Act of 1922 on the Abandoned Portions of Rights-of-Way Granted to Railroad Companies," 43 *U.S.C.* § 912 (1970), hereafter referred to as the "1922 Act," the landowners contend that partial abandonment of a right-of-way granted by Congress is legally permissible. Contending that *Mills* and the 1922 Act deal only with a total abandonment of a railroad right-of-way, the railroad denies that an abondonment of a portion of the right-of-way, a diminution of its width, is legally permissible. We agree with the railroad, and with the Court of Appeals' holding that the "railroad is legally incapable of abandoning the portions of the right-of-way in controversy."

In *Northern Pacific Ry. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), the Supreme Court considered whether an individual could acquire title by adverse possession to a portion of a right-of-way granted by the United States for the use of the railroad. In holding that a railroad could not voluntarily or involuntarily diminish the width of its right-of-way, the Court there stated:

"Manifestly, the land forming the right-of-way was not granted with the intent that it might be absolutely disposed of at the volition of the company. On the contrary, the grant was explicitly stated to be for a designated purpose, one which negated the existence of the power to *voluntarily alienate* the right-of-way or any portion thereof. The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right-of-way . . . This being the nature of the title to the land granted for the special purpose named, it is evident that to

give such efficacy to a statute of limitations of a State as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use, would be to allow that to be done by indirection which could not be done directly . . . 190 U.S. at 271. (Emphasis added).
*See also Northern Pacific Railroad Co. v. Smith,* 171 U.S. 260, 18 S.Ct. 794, 43 L.Ed. 157 (1898); *Northern Pacific Ry. v. Ely,* 197 U.S. 1, 25 S.Ct. 302, 49 L.Ed. 639.

▮ Here, application of the principle set forth in *Townsend* — that a railroad cannot voluntarily alienate a part of the right-of-way granted by Congress — is most appropriate; for in a case of abandonment, *intent to abandon* is the very essence of the claim. *Hoff v. Girdler Corp.,* 104 Colo. 56, 88 P.2d 100 (1939). Thus, if the railroad does not have "the power to voluntarily alienate the right-of-way or any portion thereof," it would surely be allowing by indirection what could not be done directly if the railroad is allowed to abandon a portion of the right-of-way.

In our view, the landowners' reliance on *Mills* is misplaced. There, the railroad abandoned its original right-of-way in its entirety and acquired a new right-of-way for a new and different line. Here, where the railroad continues to use its right-of-way for the purpose of maintaining rail service, different considerations are involved. As the Court noted in *Townsend, supra:*
"By granting a right-of-way four hundred feet in width Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance. Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right-of-way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right-of-way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes." 190 U.S. at 272 (Citations omitted).
Congress' rationale for specifying the width of the rights-of-way was pinpointed by our Court of Appeals:
"[C]ongress intended to create a buffer zone between railroad

activities and the adjoining lands, and the entire right-of-way granted was to be dedicated to the public purpose served by the railroad.''

The landowners further contend that the 1922 Act, 43 *U.S.C.* § 912 (1970), permits a partial abandonment of the right-of-way. This Act provides that:

''Whenever public lands of the United States have been or may be granted to any railroad company . . . and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment . . . declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall . . . be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal sub-division or sub-divisions traversed or occupied by such railroad . . . ''

However, we find no support for the landowners' position. Since the enactment of this law, only two cases dealing with the issue of partial abandonment of a right-of-way have been decided. *Richardson Real Estate Mining & Commercial Corp. v. Southern Pac. Co.,* 32 Ariz. 491, 260 P. 195 (1927); *Barnes v. Southern Pac. Co.,* 16 F.2d 100 (9th Cir. 1926), *cert. denied,* 273 U.S. 766, 47 S.Ct. 571, 71 L.Ed. 881 (1926). In both cases, the courts rejected the contention that the 1922 Act allowed a railroad to diminish the width of its right-of-way by partial abandonment. In *Barnes,* which is the only Federal case since the enactment of the 1922 Act involving the issues raised here, the effect of the 1922 Act on partial abandonment was specifically raised and fully briefed by both parties in that action. By its decision, the Court of Appeals specifically rejected the argument that the 1922 statute permitted partial abandonment without explicitly referring to that statute. In *Richardson,* which is, as we have said, the only other case dealing with the issue here, the Arizona Court relied upon *Barnes* and precisely held that a railroad cannot partially abandon a right-of-way granted by the U.S. Government.

Furthermore, scrutiny of the legislative history surrounding the 1922 Act reveals that Congress anticipated only two situations in which the Act would apply:

"In some cases a right-of-way was granted by the government and later forfeited, while in other cases change in the location of the railroad resulted in the abandonment of the old right-of-way." H.R. Rep. No. 217, 67th Cong. 1st Sess. (1921). Since this case involves neither a forfeiture, nor a change in the location of the railroad, we find that the 1922 Act does not apply.

Since we affirm the decision of the Court of Appeals, and hold that the railroad cannot legally abandon the portion of its right-of-way here in issue, we need not consider the question of whether there is adequate evidence in the record to support the trial court's finding of abandonment.

The judgment of the Court of Appeals is affirmed.